25 So.2d 264

**PIPER v. HALFORD.**

3 Div. 441.

Supreme Court of Alabama.
Jan. 17, 1946.

Rehearing Denied March 28, 1946.

Powell & Hamilton and Calvin Poole, all of Greenville, for appellant.

Howell P. Rogers, of Greenville, for appellee.

GARDNER, Chief Justice.

The action is one for malpractice against a physician and surgeon. There was a verdict for the plaintiff in the sum of $2,000, but upon defendant's motion for a new trial the plaintiff, pursuant to the court's suggestion, entered a remittitur of $1,000, and a judgment in favor of the plaintiff for this latter sum was duly entered. From this judgment defendant prosecutes this appeal.

The principal question urged, both in oral argument and in brief, relates to the refusal of the trial court to give for the defendant the affirmative charge as duly requested. Much could be written by way of recital of evidence given by various witnesses, both lay and professional, but we are persuaded these details of proof will serve no useful purpose and extend this opinion to undue length. As we see it, the discussion of the case as relates to the affirmative charge may be brought within very narrow limits.

Plaintiff, a man 46 years of age, was engaged in farming on the place of one Sellers in the neighborhood of Georgiana, Alabama, where the defendant, Dr. Piper, was a practicing physician and surgeon. He was suffering with acute retention of urine, due to a stricture of the urethra. This was in August, 1942. Plaintiff first went to Dr. Watson, who was engaged in the general practice in the same community as the defendant, who tried to relieve him with what is known as a rubber catheter. Failing in that, he made no further effort at treatment. Plaintiff then went to defendant's office and told him of his trouble and the method that Dr. Watson had used. He told the defendant that Dr. Watson had advised that he go to the hospital, to which the defendant in effect replied that he thought he could relieve him, and that one of the troubles was sending folks to hospitals instead of going to the home doctor for treatment.

Plaintiff placed himself on the operating table in the defendant's office. According to the plaintiff, defendant used steel instruments, first one size and then the other, and also what he calls changing ends; and offered proof tending to show the use of such steel instruments was improper unless there was sufficient opening in the urethra. He insists that he was suffering much, and during the operation was bleeding to such an extent that he had to change clothes when he got home. The sum of $5 was paid by Sellers, the plaintiff's employer, to the defendant. During the night at home plaintiff was unable to sleep, and the next morning found himself badly swollen. Dr. Jordan, who had been his family physician, was called in and plaintiff was immediately sent to the hospital. At Stabler's hospital in Greenville an operation was found necessary, the details of which may here be omitted. There Dr. Stabler discovered that the urethra had

been fractured and the bladder punctured. Urine was in the scrotum, which was greatly swollen, in the tissues of his leg, and in his abdomen as far as his navel. Infection had set in. Plaintiff remained at this hospital under treatment for two months, and was unable to do any work for some time thereafter. He testifies that he yet feels the effects of this trouble.

The testimony of the witness Sellers is to the effect that defendant, at the time of the operation (Sellers being present the entire time), admitted he had to use some 40 pounds of pressure in his treatment. This, defendant strenuously denied. Testimony for the plaintiff, including that of Dr. Stabler, was to the effect that in such treatments, in case of a stricture in the urethra, no pressure should be used. Defendant insisted that his instruments were appropriate for the purpose and that he used care and skill in the treatment. As we read the testimony for the defense, it rests largely upon the theory that the disastrous results were not due to defendant's method of treatment but to the diseased condition of the bladder, and he offered testimony of other doctors to show that in some instances like results have followed even though no such treatment had been given.

■ Reduced to the last analysis, the question was whether or not the use of steel instruments and the pressure brought to bear by the defendant produced the unfortunate result, or was it due to plaintiff's prior physical condition. Whether or not, in this particular case, plaintiff's urethra and bladder, or either, were in any such decayed condition was a matter of speculation only, as there was no proof tending to show such condition. The case of negligence here charged was clearly one for the jury's consideration.

The authorities announcing well-known rules of law applicable to cases of this character are found cited in the recent case of Ingram v. Harris, 244 Ala. 246, 13 So.2d 48. See also Thaggard v. Vafes, 218 Ala. 609, 119 So. 647.

■ Of course, it is understood that in the absence of an express undertaking a physician or surgeon does not warrant a cure or a successful result, and is not liable for an honest mistake or error of judgment in making a diagnosis or prescribing a method of treatment where the proper course is subject to reasonable doubt.

■ Nor does the doctrine of res ipsa loquitur have application. The burden rested upon the plaintiff to show negligence. It is not enough to show that an unfortunate result followed.

We conclude that the general outline of the case as above-indicated suffices to demonstrate that the affirmative charge was properly refused.

■■ As to the motion for a new trial based upon the theory that the verdict was contrary to the great preponderance of the evidence, we are persuaded, after a careful study of the record, there was ample proof to sustain the verdict, and that this Court would not be justified in disturbing the ruling of the trial court in denying the motion for a new trial based upon this ground.

■■ Other assignments of error need no extended discussion. The first four relate to the testimony, given as a part of the history of the case, concerning the visit of plaintiff to Dr. Watson and his subsequently calling in Dr. Jordan the morning following defendant's treatment. And clearly enough, there was nothing of which the defendant could complain in the action of the court in permitting the plaintiff to state that, when Dr. Stabler operated on him he put him under ether, and that he was suffering at the time. The procedure necessary to be followed at the hospital by Dr. Stabler was properly in evidence as tending to show the extent of the injury suffered by the plaintiff, and the serious condition of plaintiff at the time.

We are of the opinion that the evidence justified the hypothetical questions propounded to Dr. Stabler, of which complaint is made in Assignments 7 and 8.

■ Assignments 9, 10, 11, and 12 merely relate to proof tending to show that Dr. Jordan and Dr. Watson were practicing physicians, along with Dr. Piper, in that particular territory.

There were other hypothetical questions propounded to Dr. Jordan and Dr. Watson which we think were sufficiently sustained by the proof and need no discussion here.

Defendant was permitted to prove without objection that he was recognized by, and in good standing as a physician and surgeon, with the Medical Society of Butler County.

Assignments 19 and 20 relate to the action of the court in sustaining plaintiff's objections to the further question as to whether or not defendant was a "reputable physician and stands high." Though there are exceptions, the general rule is that such testimony is inadmissible. Lester v. Gay, 217 Ala. 585, 117 So. 211, 59 A.L.R. 1561; Cain v. Skillin, 219 Ala. 228, 121 So. 521, 64 A.L.R. 1022; Peck v. Henderson, 22 Ala.App. 541, 118 So. 258, certiorari denied 218 Ala. 233, 118 So. 262; Sharp v. Clopton, 218 Ala. 140, 117 So. 647. This ruling presents no error to reverse.

The argument of counsel (Assignment 26) merely was rather an emphatic way of stating plaintiff's contention concerning his alleged negligent treatment by defendant, and clearly presents nothing calling for a reversal of the cause.

The court gave at the request of the defendant numerous charges stating the rules of law applicable to this case, which also seem well covered in the general charge. Refused Charge 1 is the affirmative charge, which has been treated. Refused Charge 2 was likewise, in effect, the affirmative charge, and properly refused. Charges 6 and 10 were in substance covered by given charges 3 and 5, as well as by the oral charge of the court.

After a careful study of the record, we are persuaded no error to reverse was presented, and the judgment should be here affirmed. It is so ordered.

Affirmed.

BROWN, LIVINGSTON, and SIMPSON, JJ., concur.