This is an appeal by the plaintiff, Baker, from a directed verdict in favor of the defendant, Dr. Chastain, in a medical malpractice action. She argues that the trial judge erred in granting defendant's motion for a directed verdict because the plaintiff's evidence and the reasonable inferences to be drawn therefrom, when viewed in a light most favorable to her, presented a scintilla of evidence of negligence on defendant's part and, therefore, should have been submitted to the jury.
In February, 1978, Lorine Baker had a sore shoulder. Otherwise she was in good health and had no problems with her chest. She went to Dr. Chastain, who gave her a physical examination and found her to be normal except for her shoulder. He gave her an injection for bursitis in her back. He used a needle that was an inch to an inch and one-half long. He estimated thickness of the muscle wall at the point of injection to be an inch and one-half. Inside the muscle wall at that point is the pleura, the outer lining of the lung. Dr. Whittle, another doctor who treated Mrs. Baker, testified that, as Mrs. Baker was very thin, her chest wall would be three-quarters of an inch to an inch thick.
Mrs. Baker testified that at the moment of the injection she tasted medication in her mouth, and a hematoma developed on her shoulder. Within one hour of the injection, she developed severe chest pains. Mrs. Baker was unable to reach Dr. Chastain that night. The next day, she saw Dr. Whittle. He heard no breathing sounds from her right side. He diagnosed that she had suffered a pneumothorax, which is a state in which air or other gas is present in the pleural cavity and which occurs spontaneously as a result of disease or injury to the lung or puncture of the chest wall. Both Dr. Chastain and Dr. Whittle testified that pneumothorax is a complication of this injection procedure.
Mrs. Baker was hospitalized and was operated on to draw the air out of the pleural cavity, allowing the lung to reinflate. She was discharged but had recurrences of the pneumothorax and had to be hospitalized two more times within the following four months. In November, 1978, Mrs. Baker filed a medical malpractice suit against Dr. Chastain in Conecuh County Circuit Court, alleging that the doctor negligently administered the injection into her back and punctured her right lung. Dr. Chastain denied that he was guilty of negligence and denied that his medical treatment caused plaintiff's damages, and affirmatively alleged that he had exercised the care, skill and diligence of other physicians in the community.
There was no testimony at trial by any witness who had directly observed Dr. Chastain's treatment of the plaintiff. Mrs. Baker could not see the needle being injected into her back. She testified that "he injected the shot very abruptly"; that "it seemed to go in very fast and hard"; that "it seemed like the largest shot I had most ever had in my life"; and that "it was a *Page 934 
huge shot" and "felt awfully deep." Mrs. Baker's attorney asked a hypothetical question of Dr. Whittle to elicit his opinion whether there was a causal relation between the injection and the pneumothorax. He asked the doctor to assume
. . . that a physician that injected her on February 13, one day before you saw her, used a needle that was one inch to one and a half inches in length and assume further as true that he injected the area of the right scapula at either the second or third thoracic vertebra and that she immediately tasted some foreign taste in her mouth; that within an hour thereafter she began having severe pain in her right chest and assume further that she came to you and . . . that she was in good health, in no distress whatsoever, that her breathing was good prior to the injection.
Whittle testified that, under those circumstances, he would assume that the doctor had penetrated her pleura and that the pneumothorax "was directly cause related, unless she was one of those people that have a spontaneous pneumothorax [which] would be unusual." Mrs. Baker's attorney posed another hypothetical and asked the doctor to
. . . assume that a physician on Mrs. Baker used a needle that was one inch to one and a half inches in length and assume that her physical size was the same at the time it was done as it is now as you see her sitting there and that he pushed it all the way in . . . so that it penetrated the pleura and caused a pneumothorax, can you tell this jury whether or not that is accepted medical practice in this community?
The doctor answered that, based on the hypothetical, he "would not think that would be acceptable if you just rammed a needle an inch and a half long into a lady as thin as Mrs. Baker to the hilt, I really wouldn't think that would be acceptable."
Dr. Chastain testified that he used an inch and one-half needle but that he only pushed it halfway in at the most. He testified that pneumothorax is a risk inherent in such a procedure, but that "if the physician is careful, it's less likely that he is going to have complications." In response to the question, "It's certainly not proper to do this procedure and penetrate the pleura, is it?" he responded, "No, sir."
At the close of plaintiff's evidence, the defendant moved for a directed verdict on the grounds that there was insufficient evidence to submit the case to the jury and that plaintiff had not proved with expert medical testimony that defendant committed any negligence or medical malpractice. The trial judge granted the motion.
The rule in Alabama in medical malpractice cases is that to find liability, there must be more than a mere possibility or one possibility among others that the negligence complained of caused the injury. There must be evidence that the negligence probably caused the injury. Pappa v. Bonner, 268 Ala. 185,105 So.2d 87 (1958). However, in Alabama there need be only a scintilla of evidence to require submission to the jury. If the evidence presents a mere gleam, glimmer, spark, smallest trace or scintilla to support the theory or to sustain the issue, the trial court must submit the question to the jury. Orange v.Shannon, 284 Ala. 202, 224 So.2d 236 (1969). When a directed verdict is requested, the entire evidence must be viewed in the light most favorable to the opposing party, Kilcrease v.Harris, 288 Ala. 245, 259 So.2d 797 (1972), and it should be refused where reasonable inferences may be drawn from the evidence unfavorable to the party requesting it or where there is a conflict in any material matter at issue. Baker v.Patterson, 171 Ala. 88, 55 So. 135 (1911). We must allow such reasonable inferences as the jury was free to draw, not merely those inferences which we think more probable. Alabama PowerCo. v. Guy, 281 Ala. 583, 206 So.2d 594 (1967), and cases there cited.
In a medical malpractice action, the plaintiff must establish that the doctor breached his duty to the patient "to exercise such reasonable case, diligence and skill as physicians . . . in the same general neighborhood, and in the same general line of practice, ordinarily, have and exercise in *Page 935 
a like case." Section 6-5-484 (a), Ala. Code 1975.
A plurality of this Court is of the opinion that "the language `same general neighborhood' . . . refer[s] to the national medical neighborhood or national medical community, of reasonably competent physicians acting in the same or similar circumstances." Zills v. Brown, 382 So.2d 528, 532 (Ala. 1980). (Emphasis in original.)
The doctrine of res ipsa loquitur does not apply to medical malpractice cases. Berry v. Robertson, 285 Ala. 623,235 So.2d 657 (1970). The burden rests on the plaintiff to show negligence. It is not enough to show that an unfortunate result followed. Piper v. Halford, 247 Ala. 530, 25 So.2d 264 (1946). The defendant contends that the plaintiff did not present expert medical testimony that Dr. Chastain had failed to exercise the acceptable degree of care, skill and diligence. We disagree. Dr. Whittle's expert testimony is as sufficient as that presented in Tant v. Women's Clinic, 382 So.2d 1120 (Ala. 1980). There the testimony in contest consisted of two questions which were in contradiction to some later statements by the same doctor:
 Q. In a vaginal hysterectomy would it be anticipated that the ureter would be sutured in an operation?
A. No, sir.
. . . . .
 Q. Doctor, is it in keeping with the standard of care exercised by obstetricians in this community to suture both ureters during an operation?
A. Of course not.
We consider Dr. Whittle's statements to be sufficient expert testimony. We hold that his testimony and the inferences which a jury might reasonably draw from the entire evidence present a scintilla of evidence for submission to the jury. It is solely within the province of the jury to evaluate the weight and credibility of the evidence. Tant v. Women's Clinic, supra.
We hold, therefore, that the trial court erred in granting defendant's motion for a directed verdict. We reverse the judgment appealed from and remand the cause for further proceedings.
REVERSED AND REMANDED
TORBERT, C.J., and MADDOX, JONES and BEATTY, JJ., concur.