BRADLEY, Judge.
This appeal is from a judgment in favor of the plaintiff in a personal injury action.
*581 Ellen Booth, the plaintiff, had superficial telangiectasias, a vascular condition commonly referred to as spider veins. After reading an article in a popular women’s magazine on the treatment for spider veins, Mrs. Booth consulted her obstetrician about treatment. He recommended that she see . the defendant, Thomas A. Gaskin, III, M.D., a general surgeon, for the treatment. Although this condition posed no threat to her health, the plaintiff wanted the veins eradicated for cosmetic reasons. On June 6,1978 Dr. Gaskin treated her by inserting a fine needle in the veins and injecting a scleros-ing agent, a chemical solution which dries up the vein. The magazine article that Mrs. Booth read discussed treating the veins with a saline solution rather than a sclerosing agent. When the defendant began injecting the solution, Mrs. Booth mentioned that she felt a slight stinging sensation. Dr. Gaskin assured her that this was normal. After the injection the doctor massaged the area and wrapped her leg in an elastic bandage. A few days later the plaintiff returned to Dr. Gaskin’s office to have the treated leg checked by the office nurse. Upon removal of the bandage, plaintiff discovered a chemical burn and ulceration on her leg in the area of the treatment. The plaintiff and her husband returned to the office the following Monday for the doctor to check her leg and to consult with him about the burn. Dr. Gas-kin stated that to cause such a burn he must have injected too much of the chemical solution. Mrs. Booth sought treatment from a dermatologist for her burn.
On May 27, 1980 Ellen Booth filed an action for personal injuries against Dr. Gas-kin in the Jefferson County Circuit Court. She averred in her complaint and subsequent amendment that the defendant negligently or wantonly treated her and that he failed to completely and adequately inform her of the complications and risks involved, thus performing the procedure without her informed consent.
In December 1982 a jury trial was held. The plaintiff testified that prior to receiving the treatment Dr. Gaskin did not tell her about any risk involved other than that a small brown freckle may appear at the point of the injection. She stated that he did tell her the name of the solution and how it worked, but he did not mention that the treatment was a burning process.
Dr. Gaskin’s testimony at trial conflicted with that offered by the plaintiff. The defendant said that he did discuss the use of a sclerosing agent with the plaintiff, as well as the pros and cons of this procedure. He also testified that he told Mrs. Booth the procedure worked by chemical burning of the vein and the end result may not be what she wanted. Further testimony was given that he told her she could get a chemical burn. Dr. Gaskin testified that after the plaintiff knew all this she still wanted to submit to this treatment. He admitted that he injected too much of the chemical solution.
The jury returned a verdict in favor of Mrs. Booth and against Dr. Gaskin in the amount of $10,000. The doctor filed a motion for j.n.o.v. or in the alternative for new trial. The motion was denied and he appeals.
The defendant raises two issues on appeal. The first issue raised is whether the trial court erred by refusing to allow the defendant’s former receptionist to testify as to what the doctor told his other patients about the treatment.
The defendant testified that he had performed this procedure approximately thirty times in the last couple of years on about twenty people. In an attempt to show that he had plaintiff’s informed consent, Dr. Gaskin attempted to introduce testimony from Kathy Keys, his receptionist and assistant at the time he treated plaintiff, to the effect that he had informed his other patients of the pros and cons of the procedure he was about to perform on plaintiff and, thus, he must have so informed the plaintiff. Keys was questioned out of the jury’s presence and the trial court decided that her testimony should be excluded.
In brief, as at trial, Dr. Gaskin argues that Kathy Keys’ testimony was intended to show that it was his habit to disclose the *582 dangers involved in the treatment of this vascular condition. He contends that a person’s habit is admissible as tending to prove his conduct on a particular occasion. See C. Gamble, McElroy’s Alabama Evidence § 42.01(2) (3d ed. 1977). Therefore, by Ms. Keys’ testimony, he wanted to show that his habit was to inform his patients of the possible complications which may result from this treatment. He wanted to show that he adequately informed Ellen Booth prior to performing the procedure and thus had her informed consent before he commenced the treatment.
Evidence of habit or custom is generally recognized as admissible evidence in this state. See Carwile v. State, 148 Ala. 576, 39 So. 220 (1905). Admissibility of evidence of habit or routine practice is governed by two criteria:
“(1) Is the occurrence of the routine practice numerous enough to indicate regularity? and (2) Is the occurrence of the routine practice substantially similar?”
Dothard v. Cook, 333 So.2d 576 (Ala.1976).
Keys’ testimony as to Dr. Gaskin’s habit of informing patients of the possible complications pf the procedure he was about to perform on plaintiff was inadmissible because it failed to meet the first test of admissibility set out above. In other words Keys’ testimony failed to establish a sufficient regularity of Gaskin’s alleged routine practice of informing patients of the possible complications of such a procedure to make such habit admissible.
As mentioned above, Dr. Gaskin testified that he had performed this treatment on approximately twenty people over the past two or three years. Kathy Keys testified that she worked for the defendant for only one year and she did not know the number of times that she assisted the doctor with this treatment during that year. She also did not know the number of times Dr. Gas-kin performed the procedure during this period. The trial court did not err by excluding her testimony.
The second issue is whether the trial court erred by refusing to give the following requested jury charge:
“Unless by express undertaking, a physician or surgeon does not warrant a cure or successful result, and he is not liable for an honest mistake or error of judgment in making a diagnosis, or prescribing a mode of treatment, where the proper course is subject to reasonable doubt.”
The defendant asserts that his proposed charge was a correct statement of the law as set out in Ingram v. Harris, 244 Ala. 246, 13 So.2d 48 (1943), and Piper v. Halford, 247 Ala. 530, 25 So.2d 264 (1946).
Although defendant’s requested charge was refused, the court did charge the jury that:
“[Wjhere there are several recognized methods of treatment of a particular patient, a physician is at liberty to follow the recognized method of treatment which he thinks best although witnesses have given their opinion that some other method would have been preferable.
“A physician does not guarantee the success of his treatment and has fulfilled his duty to a patient if he prescribes a proper treatment, even though it does not produce good results.”
This charge is substantially the same charge as that requested by Dr. Gaskin. The refusal to give charges, although a correct statement of the law, is not reversible error if the same area of the law is fully and substantially covered by the trial court’s oral charge. Long-Lewis Hardware Co. v. Lightsey, 392 So.2d 545 (Ala.Civ.App.1980), cert. denied, 392 So.2d 548 (Ala.1981).
The trial court’s decision is affirmed.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.