Janet Shumaker appeals from an adverse judgment based on a jury verdict in her medical malpractice action against Dr. Kraig Johnson, a medical doctor, and Dr. Harlan Radue, a chiropractor. The sole issue raised by Shumaker concerns the propriety of certain jury instructions regarding *Page 992 
Dr. Johnson's good faith in choosing among alternative treatment methods. Although Dr. Radue was a named defendant in the case at trial, the issues addressed in this appeal do not involve him. Because we agree with Shumaker's contention, we reverse and remand this cause for further proceedings consistent with this opinion.
 Facts
Ms. Shumaker, who was 32 years old at the time, saw Radue on October 6, 1984. Testimony in the record indicates that Shumaker had been suffering back spasms and had sought out Radue for treatment. Shumaker underwent a spinal manipulation administered by Radue. However, when Shumaker returned to work she began to experience numbness and weakness in both legs and could not stand or support any weight on either foot. She was transported to the emergency room at Brookwood Hospital in Birmingham.
Shumaker was seen initially at the emergency room by a nurse Embry, who took a "patient history" from Shumaker. The record indicates that Shumaker described her condition to nurse Embry and that Embry made notes on a printed form used in the patient admission process for emergency room cases. The record indicates that the admission form prepared by Embry notes that the "chief complaint" from Shumaker was that her legs were numb. The record also indicates that other parts of the admission form prepared by Embry disclosed that Shumaker was experiencing numbness from the waist down and that she was unable to stand or to support any weight on her feet.
Testimony from Dr. Johnson indicates that after Embry finished with the initial examination of Shumaker, he personally entered the room with Shumaker and did his own physical examination to determine Shumaker's condition. Johnson testified that he found numbness in both of Shumaker's legs. He stated that he found that Shumaker suffered decreased sensation in her right thigh and that this condition was constant. However, he also stated that he determined that Shumaker suffered decreased sensation in her left thigh but that this condition was not constant.
In response to questions, Johnson testified that he performed sensation tests and reflex tests upon Shumaker. Johnson stated that he performed both patellar reflex (knee and hammer) tests and Achilles tendon reflex tests on Shumaker and that he recorded normal reflexes as a result of these tests. Johnson also stated that he performed strength tests in which he had Shumaker push against his hands. It was disputed as to whether she was actually able to push against his hands with any strength; however, Johnson stated that his recollection was that Shumaker was able to do so but that the exertion was painful for her.
Johnson also ordered X-rays of Shumaker's spine. Johnson reviewed the X-rays and found no apparent injury to the spinal cord. A radiologist who later viewed those same X-rays concurred in that diagnosis.
The record indicates that nurse Embry examined Shumaker a second time just before her release and noted a further decrease in sensation in her legs. Johnson admitted that Embry reported this condition to him just prior to his ordering Shumaker to be discharged from the emergency room. Despite this most recent report of further decreased sensation in Shumaker's legs, Johnson ordered that Shumaker be discharged and told her to go home. However, as Shumaker was getting off the examination table upon which she was lying, her back "popped," causing such an injury that she has been a paraplegic since that time.
Evidence in the record indicates that Johnson suspected that Shumaker had suffered a spinal cord injury from the time of his initial examination. He stated that the proper procedure for evaluating a possible spinal cord injury would be to first immobilize the patient, in order to decrease the possibility of further injury or damage to the spinal cord. Johnson admitted that it would be below the appropriate standard of care expected of a physician if he suspected spinal cord injury and failed to immobilize the patient. Johnson's statement that immobilization *Page 993 
would be proper where spinal cord involvement or injury was suspected was corroborated by other testimony in the record. Shumaker was not immobilized at any time during her treatment by Johnson. Moreover, even though the record indicates that Johnson suspected spinal cord involvement in this case, he failed to order diagnostic tests, such as a CAT scan or a myelogram, that would reveal possible spinal cord involvement.
The jury returned a verdict in favor of Johnson. Shumaker appeals from the judgment based on that verdict, contending that the "good faith error" jury charge was improper and should not have been given to the jury. That is the only issue raised for our review on appeal.
The trial court gave the following jury charge:
 "There is no requirement under our law that the physician be infallible in his diagnosis or treatment of his patient. And where the proper course of treatment in a particular situation is subject to reasonable doubt, a physician is not liable for an honest mistake or an honest error or judgment, so long as he meets the required standard of care."
Shumaker contends that this jury charge should not be allowed in medical malpractice cases because it tends to confuse the jury. She contends that the charge implies that the doctor must "in bad faith" commit an error or omission that causes the plaintiff injury. Additionally, she contends that the charge denies plaintiffs in medical malpractice cases equal protection of the law because only doctors, among professionals, are entitled to the "good faith error" charge.
The propriety of allowing jury charges similar to the one involved in this case in medical malpractice cases has been the subject of comment. See Sasser v. Connery, 565 So.2d 50
(Ala. 1990) (Hornsby, C.J., concurring specially). In Sasser, this particular issue was not discussed by the majority. However, in this case, the issue is squarely presented for our review.
Initially, we note that the legislature has codified the standard of care to be exercised by physicians in this state. Code 1975, § 6-5-484, provides as follows:
 "(a) In performing professional services for a patient, a physician's, surgeon's, or dentist's duty to the patient shall be to exercise such reasonable care, diligence and skill as physicians, surgeons, and dentists in the same general neighborhood, and in the same general line of practice, ordinarily have and exercise in a like case. In the case of a hospital rendering services to a patient, the hospital must use that degree of care, skill and diligence used by hospitals generally in the community.
 "(b) Neither a physician, a surgeon, a dentist nor a hospital shall be considered an insurer of the successful issue of treatment or service."
This statutory standard is clear and unambiguous. There is no mention of the physician's "good faith" in the performance of his professional duties. The Code section clearly states an objective standard for the performance of professional duties by physicians. Cf. Somer v. Johnson, 704 F.2d 1473 (11th Cir. 1983) (holding that "honest error" jury charge does not correctly state the standard of care required of physicians by Fla.Stat.Ann. § 768.40 et seq.).
The jury charge at issue in this case had its genesis in the case of Robinson v. Crotwell, 175 Ala. 194, 57 So. 23 (1911).Robinson disallowed a charge stating that the jury could not find for the plaintiff if the defendant doctor committed a "mere error of judgment" but gave the plaintiff the benefit of his "best judgment." Id., 175 Ala. at 203-04, 57 So. at 24-25. The charge given in Robinson was not exactly the same as the one given in this case. The problem with the Robinson
instruction was that it required no care of doctors at all, while the charge given in this case did require a doctor to meet a standard of care. However, since the Robinson decision, the "honest mistake" rule has been followed in this state. See, e.g., Otwell v. Bryant, 497 So.2d 111 (Ala. 1986); Mosesv. Gaba, 435 So.2d 58 (Ala. 1983); Riddlesperger v. United *Page 994 States, 406 F. Supp. 617 (N.D.Ala. 1976) (applying Alabama law);Piper v. Halford, 247 Ala. 530, 25 So.2d 264 (1946); Ingram v.Harris, 244 Ala. 246, 13 So.2d 48 (1943).
However, we note that a growing number of jurisdictions have abandoned the "good faith" rule in recent years. See, e.g.,Rogers v. Meridian Park Hospital, 307 Or. 612, 772 P.2d 929
(1989) (disapproved where differing treatment choices are possible); Kobos v. Everts, 768 P.2d 534 (Wyo. 1989) ("honest error" language in jury charge does not address legal standard of care but merely speaks to a moral duty); Ouellette v. Subak,391 N.W.2d 810 (Minn. 1986) ("Upon reflection we now conclude the time has come to hold that in professional malpractice cases the mostly subjective 'honest error in judgment' language is inappropriate in defining the scope of the professional's duty"); Magbuhat v. Kovarik, 382 N.W.2d 43 (S.D. 1986) (standard of care for doctors is the same as that for other professionals, and good faith or bad faith in deviation from the standard is irrelevant); Watson v. Hockett, 107 Wn.2d 158, 727 P.2d 669 (1986) (use of word "honest" imparts argumentative aspect to jury charges on standard of care); Wallv. Stout, 310 N.C. 184, 311 S.E.2d 571 (1984) (holding that "honest error" charge is potentially confusing when made part of jury charge on standard of care); Teh Len Chu v. FairfaxEmergency Medical Associates, 223 Va. 383, 290 S.E.2d 820
(1982) (terms such as "bona fide error" or "honest mistake" have no place in instructions dealing with negligence in medical malpractice actions); Veliz v. American Hosp., Inc.,414 So.2d 226 (Fla.Dist.Ct.App.), rev. denied, 424 So.2d 760
(Fla. 1982) (holding that an honest error charge in nurse's negligence case is potentially confusing to jury).
It has been noted:
 "In Logan v. Greenwich Hospital Ass'n, 191 Conn. 282, 465 A.2d 294 (1983), the court stated:
 " '[T]o use such a phrase [that a doctor would not be liable for a "bona fide error in judgment"] in a charge upon negligence serves only to confuse the jury by implying that only an error in judgment made in bad faith can be actionable. The central issue in the ordinary negligence case is whether the defendant has deviated from the required standard of reasonable care, not his mental state at the time of the conduct which constitutes the deviation.'
"191 Conn. at 299, 465 A.2d at 303.
 "In the case of Teh Len Chu v. Fairfax Emergency Medical Associates, 223 Va. 383, 290 S.E.2d 820
(1982), the court stated:
 " '[W]e believe that terms such as "honest mistake" and "bona fide error" have no place in jury instructions dealing with negligence in medical malpractice cases. The terms not only defy rational definition but also tend to muddle the jury's understanding of the burden imposed upon a plaintiff in a malpractice action. If use of the terms were permitted, it would be appropriate to ask: Must a plaintiff prove a "dishonest mistake" or a "bad faith error" in order to recover? The obvious negative answer reveals the vice in the use of the terms.' "
Sasser v. Connery, 565 So.2d 50, 53 (Ala. 1990) (Hornsby, C.J., concurring specially).
This Court now holds that the "good-faith error" jury charge should not be given in medical malpractice cases because of its potential for confusing the jury. It can not be reasonably argued that it is not potentially confusing. However, we do not create in this case a rule that would make physicians insurers of their patients' successful treatment. Neither do we hold that a physician guarantees the successful outcome of treatment or guarantees recovery in a given case. We merely hold that jury instructions concerning the standard of care expected of a physician must not include language that would absolve a defendant from liability for having made an "honest mistake," a "bona fide error," or a "good faith error." Negligence that results in injury should support a finding of liability by a jury regardless of whether the act or omission giving rise to the injury was caused by an "honest error in judgment." *Page 995 
Because we hold that the "honest error in judgment" or "honest mistake" charge is potentially confusing and therefore objectionable, we pretermit discussion of whether such a charge denies plaintiffs in medical malpractice cases equal protection of the law. The judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
JONES, ALMON, SHORES and KENNEDY, JJ., concur.
MADDOX, HOUSTON and STEAGALL, JJ., dissent.