Jefferson Clinic, P.C., a professional corporation of physicians practicing medicine at Cooper Green Hospital in Birmingham, Alabama, appeals a judgment based on a jury verdict in favor of Cora Roberson in the amount of $250,000. We reverse and remand.
Roberson was injured in an automobile accident and was taken to Cooper Green *Page 1244 
Hospital, where she was diagnosed as having five broken ribs and a pneumothorax, which is a partially collapsed lung. When Roberson was admitted to Cooper Green, several X-rays were done of her spine, including her neck. The X-rays of Roberson's neck did not indicate a fracture and, therefore, she was treated for a strain to her neck. Physical therapy was attempted on Roberson for the neck strain; however, it was abandoned because she could not endure the pain. Although Roberson contends that she continued to be in intense pain, no further tests were run on her neck to determine if, in fact, there was a fracture to the spine that had not shown up on the original X-rays taken of her neck. She was released from the hospital and was sent to a nursing home, where she stayed until she returned for two check-ups at Jefferson Clinic; her condition was found to be improving. Thereafter, she sought the opinion of Dr. Gaylon Rogers. Dr. Rogers examined her and placed her back in the hospital. He ordered further X-rays of her neck and later ordered a CT scan; the CT scan indicated that there was, indeed, a fracture to the vertebrae of her neck.
Roberson thereafter sued Jefferson Clinic, Cooper Green Hospital, and her attending physicians, alleging that she had received negligent medical care. Cooper Green and three of the physicians were dismissed prior to trial. The jury returned a verdict in favor of the other physician; therefore, Jefferson Clinic is the sole party appealing.
Following the trial, the judge charged the jury as follows:
 "Now, as to the burden of proof on the plaintiff in this particular case, you must be reasonably satisfied from the evidence that the defendant or the defendants failed to exercise that degree of reasonable care, diligence and skill in the diagnosis and/or treatment of the patient which is ordinarily possessed and ordinarily exercised by practitioners in the same line of practice in the same or national neighborhood at the time in which Dr. Leitner and Jefferson Clinic acted.
 "Now, the word 'treatment,' as you have heard in this charge and you have heard through this case, it covers all of the steps that are taken in order to effect a cure of a condition, illness, injury or disease. It would include examination and diagnosis, as well as the application of remedies, in order to bring about the hoped-for result. Where there are various recognized methods of diagnosis or treatment, a physician is at liberty to follow the recognized method of treatment or diagnosis which he thinks is best, although there may be some witnesses or some other witnesses who may have given their opinion that some other method would have been preferred.
 "Ladies and gentlemen, before I forget it, there is a matter that I want to go over with you. You have heard at various times throughout the testimony some mention of the JCAH, or the Joint Commission on Accreditation of Hospitals, and let me charge you in that regard, that as far as these defendants, Dr. Carol Leitner and the Jefferson Clinic, P.C., you may not consider any testimony concerning the Joint Commission on Accreditation of Hospitals in your determination or your deliberation as to the culpability, that is, the liability of either of these defendants.
 "Ladies and gentlemen, it is the law and there is no requirement in the law that a physician should be infallible in his diagnosis or in his treatment of the patient's medical condition. However, it is no defense for the defendant physician or defendant medical clinic that the errors, mistakes, acts, or omissions of the defendant physician or the agents and employees of the defendant medical clinic were made in good faith or through an error in judgment. If they deviate from the applicable standard of care and the patient is injured as a result of such deviation, then they may be held liable if the patient's injury is proximately caused by the physician's failure to meet the applicable standard of care.
 "As I have stated, a physician does not ensure the correctness of his or her diagnosis, but his responsibility in diagnosing a patient's sickness or ailment is to use such reasonable care and skill and diligence as a physician of his specialty . . . would ordinarily exercise in a similar case to determine *Page 1245 
the nature of the patient's sickness or ailment.
". . . .
 "Ladies and gentlemen, I charge you, after a physician has undertaken the treatment of a patient, he or she is under a duty to continue her services so long as treatment is required, until the relation of physician and patient has been ended by the mutual consent of the parties or by the dismissal of the physician by the patient, or unless the physician gives to the patient notice that she intends to withdraw from the case, and affords the patient a reasonable opportunity to [procure] other medical attendants.
 "The relation of a physician and patient, once initiated, continues until it is ended by the consent of the parties, or revoked by the dismissal of the physician, or until his services are no longer needed. And until then, the physician is under a duty to continue to provide necessary medical care to the patient as a part of the correct treatment of the patient; the physician must exercise reasonable and ordinary care and skill in determining when he may properly discontinue his treatment. As long as anything remains to be done to effect a cure, it cannot be said that the treatment has ceased.
 "The defendant physician and the defendant agents of the defendant medical clinic were, during the existence of the relationship, the physician and patient, were under a duty to give the patient all necessary care as long as she required attention. And an unwarranted lack of diligence in attending the patient after assumption of the case for treatment may render the defendant physician and/or the defendant medical clinic liable for negligence or malpractice if such negligence or malpractice proximately caused the injury to the patient.
 "A physician who practices a specialty or holds himself or herself out as a specialist may be liable for failure to use standard diagnostic procedures to identify the patient's problems, and a delay in using such procedure shows a further lack of skill and diligence, for which liability may be imposed. The standard diagnostic procedures are determined by physicians in the national health care community in the same general line of practice as that of the defendant physician."
 First, Jefferson Clinic contends that the trial judge erred in charging the jury that "it is no defense for the defendant physician or defendant medical clinic that the errors, mistakes, acts, or omissions of the defendant physician or the agents and employees of the defendant medical clinic were made in good faith or through an error in judgment."
Jefferson Clinic argues that this charge, which is just the reverse of the "honest error charge" found to be error inShumaker v. Johnson, 571 So.2d 991 (Ala. 1990), is equally confusing and misleading to the jury and, therefore, should not have been allowed. In Shumaker v. Johnson, 571 So.2d 991
(Ala. 1990), this Court reviewed the propriety of the following "honest error" jury charge given in a medical malpractice case:
 " 'There is no requirement under our law that the physician be infallible in his diagnosis or treatment of his patient. And where the proper course of treatment in a particular situation is subject to reasonable doubt, a physician is not liable for an honest mistake or an honest error [of] judgment, so long as he meets the required standard of care.' "
Shumaker, at 993.
Chief Justice Hornsby, speaking for a majority of the Court, stated:
 "Shumaker contends that this jury charge should not be allowed in medical malpractice cases because it tends to confuse the jury. She contends that the charge implies that the doctor must 'in bad faith' commit an error or omission that causes the plaintiff injury. Additionally, she contends that the charge denies plaintiffs in medical malpractice cases equal protection of the law because only doctors, among professionals, are entitled to the 'good faith error' charge.
 "The propriety of allowing jury charges similar to the one involved in this case in medical malpractice cases has been the *Page 1246 
subject of comment. See Sasser v. Connery, 565 So.2d 50 (Ala. 1990) (Hornsby, C.J., concurring specially). In Sasser, this particular issue was not discussed by the majority. However, in this case, the issue is squarely presented for our review.
 "Initially, we note that the legislature has codified the standard of care to be exercised by physicians in this state. Code 1975, § 6-5-484, provides as follows:
 " '(a) In performing professional services for a patient, a physician's, surgeon's or dentist's duty to the patient shall be to exercise such reasonable care, diligence and skill as physicians, surgeons, and dentists in the same general neighborhood, and in the same general line of practice, ordinarily have and exercise in a like case. In the case of a hospital rendering services to a patient, the hospital must use that degree of care, skill and diligence used by hospitals generally in the community.
 " '(b) Neither a physician, a surgeon, a dentist nor a hospital shall be considered an insurer of the successful issue of treatment or service.'
 "This statutory standard is clear and unambiguous. There is no mention of the physician's 'good faith' in the performance of his professional duties. The Code section clearly states an objective standard for the performance of professional duties by physicians. Cf. Somer v. Johnson, 704 F.2d 1473 (11th Cir. 1983) (holding that 'honest error' jury charge does not correctly state the standard of care required of physicians by Fla.Stat.Ann. § 768.40 et seq.).
". . . .
 ". . . [W]e note that a growing number of jurisdictions have abandoned the 'good faith' rule in recent years. See, e.g., Rogers v. Meridian Park Hospital, 307 Or. 612, 772 P.2d 929 (1989) (disapproved where differing treatment choices are possible); Kobos v. Everts, 768 P.2d 534 (Wyo. 1989) ('honest error' language in jury charge does not address legal standard of care but merely speaks to a moral duty); Ouellette v. Subak, 391 N.W.2d 810 (Minn. 1986) ('Upon reflection we now conclude the time has come to hold that in professional malpractice cases the mostly subjective "honest error in judgment" language is inappropriate in defining the scope of the professional's duty'); Magbuhat v. Kovarik, 382 N.W.2d 43 (S.D. 1986) (standard of care for doctors is the same as that for other professionals, and good faith or bad faith in deviation from the standard is irrelevant); Watson v. Hockett, 107 Wn.2d 158, 727 P.2d 669 (1986) (use of word 'honest' imparts argumentative aspect to jury charges on standard of care) Wall v. Stout, 310 N.C. 184, 311 S.E.2d 571 (1984) (holding that 'honest error' charge is potentially confusing when made part of jury charge on standard of care); Teh Len Chu v. Fairfax Emergency Medical Associates, 223 Va. 383, 290 S.E.2d 820 (1982) (terms such as 'bona fide error' or 'honest mistake' have no place in instruction dealing with negligence in medical malpractice actions); Veliz v. American Hosp., Inc., 414 So.2d 226 (Fla.Dist.Ct.App.), rev. denied, 424 So.2d 760 (Fla. 1982) (holding that an honest error charge in nurse's negligence case is potentially confusing to jury).
"It has been noted:
 " 'In Logan v. Greenwich Hospital Ass'n, 191 Conn. 282, 465 A.2d 294 (1983), the court stated:
 " ' "[T]o use such a phrase [that a doctor would not be liable for a 'bona fide error in judgment'] in a charge upon negligence serves only to confuse the jury by implying that only an error in judgment made in bad faith can be actionable. The central issue in the ordinary negligence case is whether the defendant has deviated from the required standard of reasonable care, not his mental state at the time of the conduct which constitutes the deviation."
" '191 Conn. at 299, 465 A.2d at 303.
 " 'In the case of Teh Len Chu v. Fairfax Emergency Medical Associates, 223 Va. 383, 290 S.E.2d 820 (1982), the court stated:
 " ' "[W]e believe that terms such as 'honest mistake' and 'bona fide error' have no place in jury instructions dealing with negligence in medical malpractice cases. *Page 1247 
The terms not only defy rational definition but also tend to muddle the jury's understanding of the burden imposed upon a plaintiff in a malpractice action. If use of the terms were permitted, it would be appropriate to ask: Must a plaintiff prove a 'dishonest mistake' or a 'bad faith error' in order to recover? The obvious negative answer reveals the vice in the use of the terms." '
 "Sasser v. Connery, 565 So.2d 50, 53 (Ala. 1990) (Hornsby, C.J., concurring specially).
 "This Court now holds that the 'goodfaith error' jury charge should not be given in medical malpractice cases because of its potential for confusing the jury. It cannot be reasonably argued that it is not potentially confusing. However, we do not create in this case a rule that would make physicians insurers of their patients' successful treatment. Neither do we hold that a physician guarantees the successful outcome of treatment or guarantees recovery in a given case. We merely hold that jury instructions concerning the standard of care expected of a physician must not include language that would absolve a defendant from liability for having made an 'honest mistake,' a 'bona fide error,' or a 'good faith error.' Negligence that results in injury should support a finding of liability by a jury regardless of whether the act or omission giving rise to the injury was caused by an 'honest error in judgment.' "
Shumaker, at 993-94.
The purpose of eliminating the "honest error" charge inShumaker was to prevent the confusion of the jury. As stated inShumaker, the issue in a medical malpractice case is whetherthe doctor has breached the standard of care, and the issue ofgood faith on the part of the physician has no place in thistype of case. We need look no further than Shumaker for the proposition that the injection of subjective standards rather than objective standards into the jury's deliberative process clearly causes confusion. Despite the fact that in this case the judge gave the opposite of the "honest error charge," we hold that the resulting confusion of the jury is the same. Therefore, on the basis of the rationale of Shumaker, the judgment in this case is hereby reversed.
REVERSED AND REMANDED.
HORNSBY, C.J., and ALMON, STEAGALL and INGRAM, JJ., concur.
MADDOX, SHORES and HOUSTON, JJ., dissent.