This is an appeal from a judgment based on a directed verdict in a medical malpractice case.
The decedent checked into the Mobile Infirmary at 4:15 p.m., on July 5, 1981, for a voluntary heart catheterization, a diagnostic procedure to determine the extent of damage to the blood vessels of the heart resulting from a previous heart attack. The record reveals that the decedent was having chest pains when he checked into the hospital and that he was taking nitroglycerin tablets for that pain. He was examined by Dr. Jerry Jordan, who was to perform the catheterization. Dr. Jordan thereafter called Dr. Pennington, the appellee, to discuss the case. The two doctors determined that the patient should be placed in the telemetry unit so that his heart could be monitored and he could be observed more closely. They wanted the patient to "settle down" before the heart catheterization was performed the following morning.
Between the hours of 5:00 p.m., and 12:30 a.m., the patient remained in the telemetry unit. He was monitored by nurses who were in telephone contact with Dr. Pennington; however, Dr. Pennington never came to the hospital to examine his patient. Dr. Pennington changed the medication dosage several times via telephone and one of the nurses on duty testified that she was never unable to reach Dr. Pennington during the evening. She also testified that the patient seemed to settle down at intervals during the evening although he did have periods of chest pain, and she said, he continued to smoke, argue with his wife, and take nitroglycerin tablets against the nurse's advice. At approximately 12:37 a.m., the patient suffered another heart attack. He was immediately attended by a physician and the nurse on duty. Dr. Pennington was notified, and he arrived at the hospital at approximately 1:25 a.m. Upon his arrival, he ordered the cessation of resuscitative efforts.
The plaintiff contends that the trial court erred in refusing to submit the case to the jury.
 The rule in medical malpractice cases is that to find liability, there must be more than a mere possibility or one possibility among others that the negligence complained of caused the injury; there must be evidence that the negligence probably caused the injury. Baker v. Chastain, 389 So.2d 932 (Ala. 1980). If there is a scintilla of evidence in a malpractice case that the negligence complained of probably caused the injury, a jury question is presented. Orange v. Shannon, 284 Ala. 202, 224 So.2d 236 (1969).
Williams v. Bhoopathi, 474 So.2d 690, 691 (Ala. 1985). While the plaintiff has set forth expert testimony in her brief which, on its face, would appear to rise to the level of a scintilla of evidence proving probable cause, we are bound to consider the expert testimony as a whole. Malone v. Daugherty,453 So.2d 721 (Ala. 1984). We find that although one of the plaintiff's experts stated *Page 971 
that Dr. Pennington's absence at the hospital probably caused the patient's death, he later recanted and stated that, of course, no one could know whether the doctor could have saved Mr. Pendarvis if he had been present.
The plaintiff's experts also offered alternative methods of treatment that they claim should have been considered by Dr. Pennington. In Hines v. Armbrester, 477 So.2d 302 (Ala. 1985), this Court stated:
 The law does not permit a physician to be at the mercy of testimony of his expert competitors, whether they agree with him or not. In the case of Jackson v. Burton, 226 Ala. 483, 485, 147 So. 414, 416 [(1933)], this Court said: "The rule of law under such circumstances is that: 'Where there are various recognized methods of treatment the physician is at liberty to follow the one he thinks best, and is not liable for malpractice because expert witnesses give their opinion that some other method would have been preferable.' Harzog on Med.Jur. § 183; 48 Corpus Juris. 1124, 1127; Carraway v. Graham, 218 Ala. 453, 118 So. 807
[(1928)]; Barfield v. South Highlands Infirmary, 191 Ala. 553, 556(27), 68 So. 30, Ann.Cas. 1916C, 1097."
It is obvious from the testimony that the suggested treatments were alternative methods of treating the patient. While we recognize that one of the plaintiff's experts indicated that he would have come to the hospital to check on a patient in Mr. Pendarvis's condition, the plaintiff has offered nothing but speculation that Dr. Pennington's presence would have made a difference with regard to the decedent.
Therefore, this case is due to be, and it hereby is, affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and STEAGALL, JJ., concur.