STEAGALL, Justice.
The appeal in this medical malpractice case is from a judgment based on a directed verdict in favor of the defendant, Dr. C. Allen Martin, Jr., and from an order denying the plaintiffs’ motion for new trial.
Dr. Martin is a dentist licensed to practice in the State of Alabama; he specializes in oral and maxillofacial surgery. Thomas Marshall Byrd was referred to Dr. Martin for the surgical extraction of an impacted molar tooth. On November 16, 1983, Dr. Martin surgically removed the tooth and also surgically removed a tissue sample from Mr. Byrd’s gum in the area of the impacted molar. Before discharging Mr. Byrd, Dr. Martin informed both Mr. and Mrs. Byrd that a section of tissue had been removed and that it was being sent to a pathology lab for examination.
*443 The tissue removed from Mr. Byrd’s mouth was sent to a pathologist at Mobile Infirmary. The report prepared by the pathologist, dated November 17, 1983, indicated that the tissue sample contained a type of cancer diagnosed as keratinizing squamous cell carcinoma.[1]
On January 14, 1984, during routine 30-to 60-day review of his files, Dr. Martin discovered the pathology report dated November 17, 1983, in Mr. Byrd’s file. On January 16, 1984, Dr. Martin notified Mr. Byrd of the report’s contents and referred him directly to Dr. Barry Brown, a cancer specialist.
On that same day, Dr. Brown examined Mr. Byrd, performed another biopsy of the same area of his gum as the initial biopsy by Dr. Martin, and ran a CAT scan on his face and neck. No cancer was found. On February 13, 1984, Mr. Byrd returned to Dr. Brown because he had noticed a swollen lymph node or gland on his neck. Following Dr. Brown’s treatment of his condition by a prescription of antibiotics, Mr. Byrd visited his family physician, who referred him to Dr. James Grace.
On February 20, 1984, Mr. Byrd was admitted to Ocean Springs Hospital under the care of Dr. Grace, where the swollen lymph node was removed from his neck. The pathology report, dated February 21, 1984, indicated that the lymph node was cancerous.
On February 23, 1984, Mr. Byrd was transferred from Ocean Springs Hospital to Oschner Clinic in New Orleans, Louisiana, for further testing and treatment. Several days after undergoing exploratory surgery on February 24, Mr. Byrd underwent surgery in which 61 lymph nodes and approximately two inches of jawbone were removed. No cancer was found in any of the tissues or bone removed at Oschner Clinic, nor has any been discovered anywhere in Mr. Byrd’s body by the tests performed during checkups in the months subsequent to this surgery.
On November 18, 1985, the Byrds initiated this lawsuit against Dr. Martin, claiming that due to Dr. Martin’s allegedly negligent delay in notifying the Byrds of the results of the biopsy report, the cancerous tissue in Mr. Byrd’s mouth was allowed to spread to other parts of his body and Mr. Byrd was caused to undergo a more extensive surgical procedure than otherwise would have been necessary. Also included in the complaint was Mary N. Byrd’s claim for loss of services and consortium. The Byrds sought compensatory and punitive damages of an unspecified amount. Following Dr. Martin’s answer and motion to strike, the court dismissed the Byrds’ claim seeking punitive damages for Dr. Martin’s alleged negligence. Thereafter, the Byrds filed an amended complaint, seeking punitive damages for the alleged wanton conduct of Dr. Martin. Following the denial of Dr. Martin’s motion for summary judgment, the case went to trial. At the close of the Byrds’ case, the trial court granted Dr. Martin’s motion for directed verdict. The Byrds then filed a motion for new trial, which was denied. It is from the judgment based on the directed verdict and from the order denying the Byrds’ motion for new trial that the Byrds appeal.
The Byrds have failed to present any argument as to the trial court’s denial of their motion for new trial; therefore, we need not address this issue. The sole issue on appeal is whether the trial court erred in directing a verdict for Dr. Martin at the close of the Byrds’ case.
The standard of review applicable to this directed verdict is the scintilla rule. Burt Boiler Works, Inc. v. Snowden, 510 So.2d 173 (Ala.1987). This case was pending before the legislature adopted the “substantial evidence rule.” See § 12-21-12, Ala. Code 1975.
The basis of the directed verdict was “the Court’s belief that the plaintiffs [Byrds] failed to present a scintilla of evidence that the negligence complained of *444 probably caused the injuries in question.” This Court has previously stated:
“The rule in medical malpractice cases is that to find liability, there must be more than a mere possibility or one possibility among others that the negligence complained of caused the injury; there must be evidence that the negligence probably caused the injury.”
Pendarvis v. Pennington, 521 So.2d 969, 971 (Ala.1988) (citations omitted).
Thoroughly reviewing the record, we find no scintilla of evidence that the alleged negligence of Dr. Martin probably caused the necessity of Mr. Byrd’s subsequent surgery. The Byrds argue that due to Dr. Martin’s delay in notifying them of the biopsy results, the cancer was allowed to spread and thereby to make radical surgery necessary. The facts, however, show that, immediately following his notification of the biopsy results by Dr. Martin, Mr. Byrd was examined and tested for cancer by another biopsy and had a CAT scan done by Dr. Brown and that no cancer was found. It was not until he found a lump in his neck in mid-February, approximately 28 days after initial notification, that any cancer was discovered. Radical neck surgery followed, but no other cancer was discovered in the area where Dr. Martin had removed the initial tissue sample, nor had any been discovered in any part of his body in examinations and tests conducted after that surgery. At trial, the Byrds presented expert testimony that “would appear to rise to the level of a scintilla of evidence proving probable cause,” but we must reject that appearance because “we are bound to consider the expert testimony as a whole.” Pendarvis v. Pennington, 521 So.2d at 971 (citation omitted).
During cross-examination, the Byrds’ expert testified as follows:
“Q No. I am asking you isn’t and didn’t you testify in deposition that it’s impossible to say how long cancer had been present in Mr. Byrd when Dr. Martin first saw the plaintiff in November of 1983?
“A That is true.
“Q And the truth of the matter is, doctor, there could have already been cancer present in the jaw and in the lymph node even before Dr. Martin first saw the plaintiff; isn't that correct?
“A That’s impossible to say.
“Q Page 37, question 15, starting on line 15. Question: ‘All right. That’s correct. But what I am getting at is there could have already been cancer present in that lymph node even before Dr. Martin first saw this patient?’ Read your answer to the jury.
“A I did say yes, but it’s impossible— “Q You did say yes? Your answer was yes? That’s your answer?
“A That is correct.
“Q Your answer was yes?
“A Yes, it was.”
While this Court is not condoning the doctor’s delay in notifying Mr. Byrd, the evidence presented by the Byrds, in light of these admissions by their own expert, is insufficient to provide so much as a scintilla of evidence that the delay in notification was probably the cause of the extensive radical surgery performed on Mr. Byrd.
“ ‘ “Proof which goes no further than to show an injury could have occurred in an alleged way, does not warrant the conclusion that it did so occur, where from the same proof the injury can with equal probability be attributed to some other cause.” ’ ”
Howard v. Mitchell, 492 So.2d 1018, 1020 (Ala.1986) (citations omitted).
Therefore, we affirm the judgment of the trial court.
AFFIRMED.
JONES, SHORES and KENNEDY, JJ., concur.
MADDOX and HOUSTON, JJ., concur specially.

. PlaintifPs expert described this kind of cancer as "superficial cancer, cancer that is in a soft tissue.”