Joyce Parker and her husband, Joseph Parker, sued Dr. Wyatt E. Collins and Chattahoochie Valley Hospital Society, Inc., doing business as George H. Lanier Memorial Hospital and Nursing Home (hereinafter referred to as "Lanier Memorial Hospital"), alleging that Dr. Collins negligently performed a mammogram upon Mrs. Parker and that he then negligently interpreted the test results to be negative. The Parkers alleged that Lanier Memorial Hospital breached a contractual obligation to provide them with quality radiology service and claimed that the hospital was vicariously liable for Dr. Collins's actions. The Parkers sought damages for medical expenses, noneconomic damage, and loss of consortium. The defendants answered, pleading contributory negligence and intervening *Page 826 
cause as affirmative defenses. At the close of the plaintiffs' evidence, the trial court directed verdicts in favor of both defendants. The Parkers appeal from the judgment based on those directed verdicts.
The standard of review applicable to a directed verdict is whether the nonmoving party has presented substantial evidence in support of his position; if he has not, then a directed verdict would be proper. Bailey v. Avera, 560 So.2d 1038
(Ala. 990).
In January 1988, Mrs. Parker discovered a lump in her breast; she underwent a mammogram at Lanier Memorial Hospital, a public self-referral clinic. Dr. Collins, her radiologist, examined the breast and then interpreted her mammogram as negative for cancer. In December 1988, another physician diagnosed Mrs. Parker as having breast cancer, which had begun to spread into her lymph nodes. Mrs. Parker's surgeon, Dr. Fernando Sanchez, informed her that she could undergo a lumpectomy, which does not require removal of the entire breast, or a modified radical mastectomy. She chose to undergo the mastectomy, and the surgeon also removed several mammary glands that were cancerous. Mrs. Parker then underwent a series of chemotherapy and radiation treatments to help destroy any cancer cells that might have spread into her lymph nodes.
The Parkers argued that the X-rays Dr. Collins had interpreted were plainly inadequate and that he was negligent in basing his diagnosis upon them. They further argued that with earlier detection of the cancer Mrs. Parker would have avoided chemotherapy and radiation treatment and would have had a better chance for long-term survival. Finally, they argued that in hiring Dr. Collins, Lanier Memorial Hospital became vicariously liable for his alleged negligence.
To prove liability in a medical malpractice case, the plaintiff is required to show that the health care provider failed to exercise such reasonable care, skill, and diligence as other similarly situated health care providers in the same general line of practice ordinarily have and exercise in a like case. Ala. Code 1975, § 6-5-548. There must be more than the mere possibility that the negligence complained of caused the injury; rather, there must be evidence that the negligence complained of probably caused the injury. Byrd v. Martin,548 So.2d 442 (Ala. 989); see, also, Parrish v. Russell,569 So.2d 328 (Ala. 990), quoting Williams v. Bhoopathi, 474 So.2d 690
(Ala. 985).
To support their claims, the Parkers submitted the expert testimony of several radiologists. Dr. Beth Cruse testified that the film was "grossly technically inadequate and suboptimal for interpretation" and that Dr. Collins violated the accepted standard of radiology care by basing his diagnosis upon it. Her opinion was corroborated by deposition testimony from Dr. Marc Homer, who deemed the X-rays to be significantly substandard.
Dr. Nicholas Robert, a cancer specialist, testified at trial as to the effect of the delay in diagnosing Mrs. Parker's condition. Based on the evidence regarding the size of the lump discovered by Mrs. Parker in January, as well as the medical evidence surrounding the subsequent growth of the lump, Dr. Robert said that he was 80% certain that the cancer had not spread into Mrs. Parker's lymph nodes as of January. Dr. Sanchez, Mrs. Parker's surgeon, then testified that Mrs. Parker's mastectomy and the course of chemotherapy and radiation treatments that followed were necessary, because the cancer had spread into her lymph nodes. He also testified that breast cancer has a higher rate of recurrence once it has spread into the lymph glands.
In ruling on the defendants' motions for directed verdict, the trial court properly drew all inferences favorable to the Parkers and thus assumed that Mrs. Parker actually had cancer in January and that the X-rays Dr. Collins had read were of inferior quality. The court, however, held that there was no evidence to show that the inferior X-rays caused Mrs. Parker to undergo a course of treatment in December 1988 that she would not have had to endure in January 1988. The court concluded that *Page 827 
the element of causation had not been established, and, therefore, it granted the motion for directed verdict.
This Court has previously held that the issue of causation in a malpractice case may properly be submitted to the jury where there is evidence that prompt diagnosis and treatment would have placed the patient in a better position than she was in as a result of inferior medical care. Waddell v. Jordan, 293 Ala. 256, 302 So.2d 74 (1974); Murdoch v. Thomas, 404 So.2d 580
(Ala. 981). It is not necessary to establish that prompt care could have prevented the injury or death of the patient; rather, the plaintiff must produce evidence to show that her condition was adversely affected by the alleged negligence.Waddell; see also Annot., 54 A.L.R. 4th 10, § 3 (1987).
In Waddell, the plaintiff filed a malpractice suit against her mother's physician and medical clinic, alleging that they had been negligent and that their negligence had resulted in her mother's death. The evidence showed that her mother went to the emergency room of the clinic complaining of chest pains and other symptoms of a heart attack and that treatment for her mother was delayed. There was medical testimony to show that prompt treatment of the patient probably could not have prevented the occurrence of a heart attack; however, there was also evidence that more immediate care could have lessened the severity of the heart attack and possibly prevented the patient's death. We held that evidence sufficient to submit the question of causation to the jury and, therefore, reversed the judgment based on the directed verdict for the doctor and the hospital.
We reached a similar conclusion in Murdoch, where a patient died after an emergency room doctor failed to adequately diagnose the patient's ruptured spleen. The patient was brought to the emergency room after he had been injured in an automobile collision, and the doctor released him with a favorable report after a two-hour examination. The doctor prescribed pain medication, but offered no follow-up instructions; the patient died the next morning. The plaintiff presented medical testimony to indicate that the symptoms the patient displayed in the emergency room were sufficient to alert the doctor to provide follow-up care, and this Court held that the evidence was sufficient to create a jury question as to causation. In so holding, we quoted from an early case addressing the same issue:
 " 'Defendant insists the evidence is insufficient to show that such lack of attention and care produced the unfortunate result, . . . but it appears that ordinarily prompt treatment as outlined should have been given to retard and inhibit the growth of the infection, and reasoning from cause to effect the jury would be authorized to infer the result was proximately produced by the neglect.' "
Murdoch, 404 So.2d at 585, quoting Torrance v. Wells, 219 Ala. 384,122 So. 322 (1929).
We note that the aforementioned cases were decided upon the scintilla rule, which required only that the evidence produce a "glimmer or mere spark" of evidence to support the theory of liability. Alabama law now requires that the plaintiff produce "substantial evidence" of liability. Ala. Code 1975, § 12-21-12. In this case, we find such evidence. While the facts do not establish that Mrs. Parker's cancer could have been prevented altogether if Dr. Collins had rendered a prompt diagnosis based on a clearer X-ray, medical testimony suggests that Mrs. Parker's condition worsened as a direct result of a diagnosis based upon a substandard X-ray. That evidence was sufficient to create a jury question as to proximate cause in this case; accordingly, we reverse that portion of the judgment based on the directed verdict for Dr. Collins.
We next must determine whether the trial court erred in directing a verdict for Lanier Memorial Hospital. We first note that the Parkers' complaint alleges no agency relationship between Dr. Collins and Lanier Memorial Hospital. While there is evidence that Dr. Collins used the hospital's facilities in conducting the mammogram and that his fee was included in *Page 828 
the bill the Parkers paid to Lanier Memorial Hospital, this does not establish an agency relationship between the defendants. On the contrary, the record shows that the use of the hospital's facilities and the fee arrangement were elements of Dr. Collins's contract with Lanier Memorial Hospital, which designated him as an independent contractor with the hospital. However, a hospital may be held liable for the negligent conduct of independent physicians and surgeons even though they are neither employees nor agents of the hospital. Humana Med.Corp. of Alabama v. Traffanstedt, 597 So.2d 667 (Ala. 992). Before this theory of corporate liability may be applied, the plaintiff must show that some underlying negligent act of the physician caused the injury. Because the issue of Dr. Collins's negligence has not yet been decided by the jury, that portion of the judgment based on the directed verdict for Lanier Memorial Hospital is hereby reversed.
The cause is remanded for further proceedings as to both defendants.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, SHORES, ADAMS, STEAGALL, KENNEDY and INGRAM, JJ., concur.