641 So.2d 265 (1994)
Martin McAFEE, a minor, who sues By and Through his mother and next friend, Terri McAFEE; and Terri McAfee, individually
v.
BAPTIST MEDICAL CENTER, et al.
Brenda J. ROBERTS and Clinton E. Roberts
v.
FAMILY MEDICAL, P.C., et al.
1920827, 1920852.
Supreme Court of Alabama.
April 22, 1994.
*266 Tom Dutton of Pittman, Hooks, Marsh, Dutton & Hollis, P.C., Birmingham, for appellants.
W. Stancil Starnes, Michael A. Florie and Joseph S. Miller of Starnes & Atchison, Birmingham, for appellees Dr. Rodney Dorand and Neonatal Associates, P.C.
W. Boyd Reeves, Norman E. Waldrop, Jr. and Tara T. Bostick of Armbrecht, Jackson, DeMouy, Crowe, Holmes & Reeves, Mobile, for Family Medical Center, P.C. and Dr. Robert A. Kimbrell.
Thomas H. Keene and Paul M. James, Jr. of Rushton, Stakely, Johnston & Garrett, P.A., Montgomery, for Dr. Gillis L. Payne, Jr., and Gillis L. Payne, Jr., M.D., P.C.
SHORES, Justice.
These consolidated appeals are from summary judgments for the defendants in two medical malpractice cases. In each case, after the defendant physician or physicians produced evidence that their actions did not cause the patient's condition to worsen, the trial court ruled that the plaintiffs had failed to present substantial evidence that the alleged negligence of the physicians probably caused the injuries that the plaintiffs complained of, and in each case the court entered a summary judgment. We affirm.
The first case involves Martin McAfee, who was born at Baptist Medical Center in Montgomery. He developed bacterial meningitis and suffered permanent brain damage and vision impairment. He (acting through his mother) and his mother (individually) sued Baptist Medical Center, Dr. Gillis Payne, Dr. Payne's professional corporation, Dr. Rodney Dorand, and Neonatal Associates, P.C. The plaintiffs alleged that the defendants had breached acceptable standards of medical practice, specifically that they had failed to recognize, appreciate, and treat the child's bacterial infection in a timely manner, and they alleged that this failure to diagnose properly had resulted in a worsening of Martin's condition.
The second case involves an alleged failure to timely diagnose the breast cancer of Brenda Roberts. She and her husband sued Family Medical, P.C., Life Diagnostic Radiology, Dr. Robert Kimbrell, and Dr. Maurice Rowell, claiming that the defendants' failure to properly evaluate the lump that Dr. Kimbrell found in Brenda's right breast resulted in a one-year delay of treatment and that that delay resulted in an unnecessary worsening of her condition.
We must consider whether the trial court erred in entering the summary judgment for the defendants in each of these cases. Rule 56, A.R.Civ.P., sets forth a two-tiered standard for determining whether to enter a summary judgment. In order to enter a summary judgment, the trial court must determine: 1) that there is no genuine issue of material fact, and 2) that the moving party is entitled to a judgment as a matter of law. In determining whether a summary judgment was properly entered, the reviewing court must view the evidence in a light most favorable to the nonmovant. See Turner v. Systems Fuel, Inc., 475 So.2d 539, 541 (Ala. 1985); Ryan v. Charles Townsend Ford, Inc., 409 So.2d 784 (Ala.1981). In this case, Rule 56 must be read in conjunction with the "substantial evidence rule" as defined by Ala. Code 1975, § 6-5-542(5), part of the Alabama Medical Liability Act:
"(5) SUBSTANTIAL EVIDENCE. Substantial evidence is that character of admissible evidence which would convince an unprejudiced thinking mind of the truth of the fact to which the evidence is directed."
"[W]hen the movant makes a prima facie showing that no genuine issue of material fact exists, ... the burden shifts to the nonmovant to show `substantial evidence' in support of his position." Leonard v. Providence Hospital, 590 So.2d 906, 907 (Ala.1991).
*267 In medical malpractice cases, the plaintiff must prove that the alleged negligence "probably caused the injury." Parrish v. Russell, 569 So.2d 328, 330 (Ala.1990), citing Williams v. Bhoopathi, 474 So.2d 690, 691 (Ala.1985). This has been the standard in Alabama for decades. In the 1929 case of McKinnon v. Polk, 219 Ala. 167, 121 So. 539 (1929), this Court stated:
"The proof must go further than merely show that an injury could have occurred in an alleged wayit must warrant the reasonable inference and conclusion that it did so occur as allegedand the inference merely that it could so occur does not warrant the conclusion that it did so occur, where from the same proof the injury can with equal probability be attributed to some other cause."
219 Ala. at 168, 121 So. at 540. The plaintiff must prove the alleged negligence through expert testimony, unless an understanding of the alleged lack of due care or skill requires only common knowledge or experience. Smith v. Medical Center East, 585 So.2d 1325 (Ala.1991).
If, as the defendants suggest, the plaintiffs are in fact asking this Court to abandon Alabama's traditional rules of proximate cause and to recognize the "loss of chance doctrine," we decline to do so.[1] Alabama law requires that a recovery not be based upon a mere possibility:
"The rule in Alabama in medical malpractice cases is that to find liability, there must be more than a mere possibility or one possibility among others that the negligence complained of caused the injury. There must be evidence that the negligence probably caused the injury. Pappa v. Bonner, 268 Ala. 185, 105 So.2d 87 (1958)."
Baker v. Chastain, 389 So.2d 932, 934 (Ala. 1980).
The plaintiffs cite us to Parker v. Collins, 605 So.2d 824 (Ala.1992), wherein we stated:
"This Court has previously held that the issue of causation in a malpractice case may properly be submitted to the jury where there is evidence that prompt diagnosis and treatment would have placed the patient in a better position than she was in as a result of inferior medical care. Waddell v. Jordan, 293 Ala. 256, 302 So.2d 74 (1974); Murdoch v. Thomas, 404 So.2d 580 (Ala.1981). It is not necessary to establish that prompt care could have prevented the injury or death of the patient; rather, the plaintiff must produce evidence to show that her condition was adversely affected by the alleged negligence. Waddell; see also Annot. 54 A.L.R.4th 10 § 3 (1987)."
Id. at 827. We do not read Parker as abrogating the rule that the plaintiff must prove that the physician's negligence probably caused the injury. In Parker, we reversed a judgment based on a directed verdict for the defendant physician on the grounds that the "medical testimony suggests that Mrs. Parker's condition worsened as a direct result of a diagnosis based upon a substandard X-ray," stating, "That evidence was sufficient to create a jury question as to proximate cause in this case...." 605 So.2d at 827 (Emphasis added.) In Parker, a cancer specialist testified that he was 80% certain that the cancer had not spread into the lymph nodes at the time of the improper diagnosis. Thus, there was expert testimony from which the jury could infer that the physician's negligence probably caused her injury.
We have carefully studied the record in each of the cases before us and in both cases we conclude that the defendants made a prima facie showing that they were entitled to a judgment as a matter of law on the issue of causation by producing evidence that their actions did not cause the patient's condition to worsen. In neither case did the plaintiffs submit substantial evidence that the patient's condition worsened as a direct result of the actions of the defendant physicians.
In the first case, the baby, Martin McAfee, contracted meningitis from bacteria. He was treated by Dr. Rodney Dorand. Dr. Dorand, a board certified neonatologist, submitted an *268 affidavit stating that he was familiar with the degree of care, skill, and diligence normally exercised by physicians practicing neonatology in 1990, and that, in his opinion, nothing he did or did not do in his care and treatment of Martin McAfee probably caused or contributed to cause any injury. The affidavit of the plaintiffs' expert, Dr. O. Carter Snead III, offered a conjectural observation that, generally, the sooner the onset of treatment, the better the expected result. There is no evidence that the actions of Dr. Dorand or those of Dr. Gillis Payne, who first saw the baby, probably caused the poor outcome. In the second case, the plaintiffs submitted affidavits stating, generally, that "time is of the essence" in treating breast cancer, and that patients who receive earlier treatment obtain a better result. There was no expert testimony to rebut the testimony submitted by the defendants indicating that the metastasis to the lymph nodes probably occurred in the early stages before the cancer could be diagnosed. The affidavits of the plaintiffs' experts did not rise to the level of substantial evidence that the actions of the defendants probably caused Brenda Roberts's injuries.
The summary judgment in each case is due to be affirmed on the authority of McKinnon v. Polk, 219 Ala. 167, 121 So. 539 (1929); Peden v. Ashmore, 554 So.2d 1010 (Ala.1989); Sasser v. Connery, 565 So.2d 50 (Ala.1990); Smith v. Medical Center East, 585 So.2d 1325 (Ala.1991); Parker v. Collins, 605 So.2d 824 (Ala.1992); and Levesque v. Regional Medical Center, 612 So.2d 445 (Ala.1993).
AFFIRMED.
HORNSBY, C.J., and HOUSTON, STEAGALL and COOK, JJ., concur.
KENNEDY and INGRAM, JJ., dissent.
KENNEDY, Justice (dissenting).
I must respectfully dissent, for the following reasons:
Both of these medical malpractice actions were filed after June 11, 1987, and are, therefore, subject to the "substantial evidence rule" set out in the Alabama Medical Liability Act, Ala.Code 1975, § 6-5-540 et seq. Section 6-5-542(5), part of that Act, defines "substantial evidence" as "that character of admissible evidence which would convince an unprejudiced thinking mind of the truth of the fact to which the evidence is directed." "[S]tandard of care," as defined by the Act, is "that level of such reasonable care, skill, and diligence as other similarly situated health care providers in the same general line of practice, ordinarily have and exercise in like cases," § 6-5-542(2). That subsection also states that "[a] breach of the standard of care is the failure by a health care provider to comply with the standard of care, which failure proximately causes personal injury or wrongful death."
In medical malpractice cases, the plaintiff must prove negligence through expert testimony, unless an understanding of the alleged lack of due care or skill requires only common knowledge or experience. Smith v. Medical Center East, 585 So.2d 1325 (Ala. 1991). There must be more than the mere possibility that the alleged negligence caused the injury; rather, there must be evidence that the negligence complained of probably caused the injury. Parker v. Collins, 605 So.2d 824 (Ala.1992); Byrd v. Martin, 548 So.2d 442 (Ala.1989); Williams v. Bhoopathi, 474 So.2d 690 (Ala.1985).
In Parker v. Collins, Joyce Parker discovered a lump in her breast. After a mammogram, her radiologist examined her breast and then interpreted the mammogram as negative for cancer. Almost a year later, Ms. Parker had another mammogram and was diagnosed as having breast cancer; the cancer had begun to spread to her lymph nodes. She sued the radiologist, alleging that the X-rays from the original mammogram had been grossly inadequate and that the doctor had been negligent in basing his decision upon them. She further alleged that earlier detection would have avoided certain treatments and would have given her a better chance of survival.
To support her claims, Ms. Parker submitted expert testimony from several radiologists who deemed the X-rays to be grossly inadequate for interpretation and significantly substandard. A cancer specialist testified as to the effect of the delay in diagnosing the cancer. The specialist testified that he was *269 80% certain that the cancer had not spread into the lymph nodes when the first mammogram was done. The surgeon who operated on Ms. Parker testified that breast cancer has a higher rate of recurrence once it has spread to the lymph nodes.
The majority has quoted the following correct statement from Parker:
"This Court has previously held that the issue of causation in a malpractice case may properly be submitted to the jury where there is evidence that prompt diagnosis and treatment would have placed the patient in a better position than she was in as a result of inferior medical care. Waddell v. Jordan, 293 Ala. 256, 302 So.2d 74 (Ala.1974); Murdoch v. Thomas, 404 So.2d 580 (Ala.1981). It is not necessary to establish that prompt care could have prevented the injury or death of the patient; rather, the plaintiff must produce evidence to show that her condition was adversely affected by the alleged negligence. Waddell; see also Annot., 54 A.L.R.4th 10, § 3 (1987)."
Parker, 605 So.2d at 827.
The Parker Court held that the plaintiff had presented sufficient evidence, based on the expert testimony, to create a jury question as to proximate cause.
In these present cases, the expert testimony presented by both sets of plaintiffs unequivocally indicates that prompt diagnosis and treatment would have placed Martin McAfee and Brenda Roberts in a better position than the position they were placed in as a result of the alleged substandard medical care. Also, the expert testimony presented by both sets of plaintiffs indicated that the condition of Martin McAfee and that of Brenda Roberts were adversely affected by substandard medical care.
The defendants argue that the plaintiffs failed to show that any acts by the doctors probably caused the injuries to Martin or Brenda. They contend that the statements in the affidavits are conjecture and, therefore, are insufficient to create a question of fact on the issue of causation and that there is no medical condition or disease about which it cannot be said that earlier diagnosis or treatment would have put the patient in a better position.
The affidavits submitted by the plaintiffs clearly state that the plaintiffs would have been in a better position had the doctors' medical care not been substandard and that the plaintiffs were adversely affected by the defendants' acts or omissions.
Indeed, the evidence presented by both sets of plaintiffs in these appeals is more compelling than the evidence put forth in Willard v. Perry, 611 So.2d 358 (Ala.1992). In Willard, one doctor testified that the plaintiff died of anaphylactic shock to penicillin. The doctor who administered the penicillin testified that the cause of death was probably sepsis. The plaintiff's expert testified that the patient's death could have been caused by either septic shock or a delayed anaphylactic reaction. This Court held that the plaintiff had presented substantial evidencethat the expert testimony presented was sufficient to warrant submitting to a jury the issues of whether the doctor breached the standard of care and, if so, whether his breach was the proximate cause of the patient's death.
In another case involving the failure to timely diagnose, the plaintiffs had experts testify, but none of them testified that the doctor's alleged negligence caused any injury to the patient. This Court affirmed the judgment based on the verdict in favor of the doctor. See, Sasser v. Connery, 565 So.2d 50 (Ala.1990).
In Smith v. Medical Center East, 585 So.2d 1325 (Ala.1991), the plaintiff's expert testified that although he disagreed with the treating physician's treatment of the patient and that he believed that the defendants caused some delay in treating the patient, he could not say that an operation probably would have saved the patient's life. Therefore, this Court held that the plaintiff had failed to produce a scintilla of evidence that the defendants' alleged negligence probably caused the patient's death.
Again, the experts' affidavits in these two cases leave no doubt that in their opinions, both patients would have been in a better position had the defendants not breached the *270 applicable standard of care and that both patients were adversely affected by the defendants' negligence. Both sets of plaintiffs presented substantial evidence creating a genuine issue of material fact. See Rule 56(c), Ala.R.Civ.P. Therefore, I would reverse the judgment in each case and remand each case for a trial on the merits.
INGRAM, J., concurs.
NOTES
[1] The majority of jurisdictions do not recognize the loss of chance (to achieve a better medical outcome) as a compensable injury. Lisa Perrochet, Sandra J. Smith, and Ugo Colella, Lost Chance Recovery and the Folly of Expanding Medical Malpractice Liability, 27 Tort & Insurance Law Journal, No. 3, at 615 (Spring 1992).