I must respectfully dissent, for the following reasons:
Both of these medical malpractice actions were filed after June 11, 1987, and are, therefore, subject to the "substantial evidence rule" set out in the Alabama Medical Liability Act, Ala. Code 1975, § 6-5-540 et seq. Section 6-5-542(5), part of that Act, defines "substantial evidence" as "that character of admissible evidence which would convince an unprejudiced thinking mind of the truth of the fact to which the evidence is directed." "[S]tandard of care," as defined by the Act, is "that level of such reasonable care, skill, and diligence as other similarly situated health care providers in the same general line of practice, ordinarily have and exercise in like cases," § 6-5-542(2). That subsection also states that "[a] breach of the standard of care is the failure by a health care provider to comply with the standard of care, which failure proximately causes personal injury or wrongful death."
In medical malpractice cases, the plaintiff must prove negligence through expert testimony, unless an understanding of the alleged lack of due care or skill requires only common knowledge or experience. Smith v. Medical Center East,585 So.2d 1325 (Ala. 1991). There must be more than the mere possibility that the alleged negligence caused the injury; rather, there must be evidence that the negligence complained of probably caused the injury. Parker v. Collins, 605 So.2d 824
(Ala. 1992); Byrd v. Martin, 548 So.2d 442 (Ala. 1989);Williams v. Bhoopathi, 474 So.2d 690 (Ala. 1985).
In Parker v. Collins, Joyce Parker discovered a lump in her breast. After a mammogram, her radiologist examined her breast and then interpreted the mammogram as negative for cancer. Almost a year later, Ms. Parker had another mammogram and was diagnosed as having breast cancer; the cancer had begun to spread to her lymph nodes. She sued the radiologist, alleging that the X-rays from the original mammogram had been grossly inadequate and that the doctor had been negligent in basing his decision upon them. She further alleged that earlier detection would have avoided certain treatments and would have given her a better chance of survival.
To support her claims, Ms. Parker submitted expert testimony from several radiologists who deemed the X-rays to be grossly inadequate for interpretation and significantly substandard. A cancer specialist testified as to the effect of the delay in diagnosing the cancer. The specialist testified that he was *Page 269 
80% certain that the cancer had not spread into the lymph nodes when the first mammogram was done. The surgeon who operated on Ms. Parker testified that breast cancer has a higher rate of recurrence once it has spread to the lymph nodes.
The majority has quoted the following correct statement fromParker:
 "This Court has previously held that the issue of causation in a malpractice case may properly be submitted to the jury where there is evidence that prompt diagnosis and treatment would have placed the patient in a better position than she was in as a result of inferior medical care. Waddell v. Jordan, 293 Ala. 256, 302 So.2d 74 (Ala. 1974); Murdoch v. Thomas, 404 So.2d 580 (Ala. 1981). It is not necessary to establish that prompt care could have prevented the injury or death of the patient; rather, the plaintiff must produce evidence to show that her condition was adversely affected by the alleged negligence. Waddell; see also Annot., 54 A.L.R.4th 10, § 3 (1987)."
Parker, 605 So.2d at 827.
The Parker Court held that the plaintiff had presented sufficient evidence, based on the expert testimony, to create a jury question as to proximate cause.
In these present cases, the expert testimony presented by both sets of plaintiffs unequivocally indicates that prompt diagnosis and treatment would have placed Martin McAfee and Brenda Roberts in a better position than the position they wereplaced in as a result of the alleged substandard medical care.
Also, the expert testimony presented by both sets of plaintiffs indicated that the condition of Martin McAfee and that of Brenda Roberts were adversely affected by substandard medicalcare.
The defendants argue that the plaintiffs failed to show that any acts by the doctors probably caused the injuries to Martin or Brenda. They contend that the statements in the affidavits are conjecture and, therefore, are insufficient to create a question of fact on the issue of causation and that there is no medical condition or disease about which it cannot be said that earlier diagnosis or treatment would have put the patient in a better position.
The affidavits submitted by the plaintiffs clearly state that the plaintiffs would have been in a better position had the doctors' medical care not been substandard and that the plaintiffs were adversely affected by the defendants' acts or omissions.
Indeed, the evidence presented by both sets of plaintiffs in these appeals is more compelling than the evidence put forth inWillard v. Perry, 611 So.2d 358 (Ala. 1992). In Willard, one doctor testified that the plaintiff died of anaphylactic shock to penicillin. The doctor who administered the penicillin testified that the cause of death was probably sepsis. The plaintiff's expert testified that the patient's death couldhave been caused by either septic shock or a delayed anaphylactic reaction. This Court held that the plaintiff had presented substantial evidence — that the expert testimony presented was sufficient to warrant submitting to a jury the issues of whether the doctor breached the standard of care and, if so, whether his breach was the proximate cause of the patient's death.
In another case involving the failure to timely diagnose, the plaintiffs had experts testify, but none of them testified that the doctor's alleged negligence caused any injury to the patient. This Court affirmed the judgment based on the verdict in favor of the doctor. See, Sasser v. Connery, 565 So.2d 50
(Ala. 1990).
In Smith v. Medical Center East, 585 So.2d 1325 (Ala. 1991), the plaintiff's expert testified that although he disagreed with the treating physician's treatment of the patient and that he believed that the defendants caused some delay in treating the patient, he could not say that an operation probably wouldhave saved the patient's life. Therefore, this Court held that the plaintiff had failed to produce a scintilla of evidence that the defendants' alleged negligence probably caused the patient's death.
Again, the experts' affidavits in these two cases leave no doubt that in their opinions, both patients would have been in a better position had the defendants not breached the *Page 270 
applicable standard of care and that both patients were adversely affected by the defendants' negligence. Both sets of plaintiffs presented substantial evidence creating a genuine issue of material fact. See Rule 56(c), Ala.R.Civ.P. Therefore, I would reverse the judgment in each case and remand each case for a trial on the merits.
INGRAM, J., concurs.