COBB, Chief Justice.
 

 Julie R. Lyons and Godfrey Lyons, plaintiffs in a medical-malpractice action in the Dallas Circuit Court, appeal from a summary judgment entered in favor of Vaughan Regional Medical Center, LLC (“Vaughan”), a limited liability company that operates the Vaughan Regional Medical Center, a medical facility. We affirm.
 

 Factual Background and Procedural History
 

 On November 21, 2003, at approximately 4:30 p.m., Julie was admitted to the Vaughan Regional Medical Center complaining of severe lower-back pain that radiated down her right leg; the diagnosis upon admission was an acute onset of right lumbar radiculopathy. A Heparin IV lock (“Hep-lock”) device was inserted into Julie’s right hand by a nurse, and Dilaudid for pain and Phenergan for nausea were administered to Julie through the Hep-lock device. According to Julie, she felt a burning sensation in her hand as the medication was administered. Approximately four hours after the medication had been administered, Julie awoke with pain in her right hand and noticed redness and swelling in the hand. Julie contends that she
 
 *25
 
 mentioned to a nurse the next time the medication was administered that the Hep-lock device was causing her discomfort but that the nurse did not respond to her complaints. During the night Julie again complained to a nurse about swelling and pain in her hand and asked the nurse to bring her an ice pack to place on her hand, which the nurse did. The swelling and pain subsided. However, during the early morning hours of November 22, the pain and swelling increased to a point that, according to Julie, “it was enough to distract me from the pain in my back.” Julie pushed the call button between two and four times without getting a response from a nurse. Finally, Julie was able to communicate by intercom with a nurse at the nurses’ station; she stated that if a nurse did not come to remove the Hep-lock device she would remove it herself. Julie recalled her hand at this point as being swollen from the tips of her fingers to approximately her midforearm. The Hep-lock device was removed from Julie’s right hand. Julie alleges the Hep-lock device “infiltrated,” i.e., went completely through the vein and into the soft tissues of her hand, and the medications were thus administered into the tissues of her right hand instead of into the vein.
 

 From the deposition testimony contained in the record,
 
 [1]
 
 it appears that the medical center’s records indicate that at 5:15 a.m. on November 22, 2003, the nurse attending to Julie noticed redness at the site where the Hep-lock device had been inserted. The medical center’s records further indicate that at 8:10 a.m. on the same date Julie complained of pain and swelling in her right hand, that the nurse noted redness in the hand, and that the Hep-lock device was discontinued. The record shows that the records from the medical center do not indicate that Julie was diagnosed with an IV infiltration while she was a patient at the medical center.
 
 [2]
 
 However, according to Dr. Iqbal Singh, Julie’s pain-management doctor, the medical center’s records indicate that later in the day of November 22, 2003, Julie’s right hand was being elevated on a pillow and-warm compresses were being applied. Dr. Singh stated that this would indicate that there was a problem with the IV-access site and that Julie had developed an infection or had inflammation at the IV-access site.
 

 Julie was discharged from the medical center on November 25, 2003, and was immediately transferred to HealthSouth Medical Center in Birmingham for back surgery. According to Julie’s husband, Dr. Singh told him on the day preceding Julie’s discharge from the medical center that he wanted to see Julie concerning her hand as soon as she returned from Birmingham. According to Dr. Singh, Julie’s medical records, however, do not indicate that Dr. Singh diagnosed Julie with an IV infiltration during her hospitalization at the medical center. The first indication in Dr. Singh’s records of an infiltration was during Julie’s post-surgical follow-up visit to Dr. Singh on December 9, 2003, the notes for which, according to Dr. Singh, stated: “Patient’s right hand edematous,
 
 *26
 
 purple, and cool to touch. Patient states she had recent IV infiltrate in the right hand and it’s still tender.” Dr. Singh diagnosed Julie as having reflex sympathetic dystrophy (“RSD”). According to Dr. Singh:
 

 “Reflex Sympathetic Dystrophy is a condition that is seen after trauma of any kind. And it results in certain degree of changes in the extremity depending on the stage of the problem. Initially the pain in that limb becomes out of proportion with the degree of the injury and patient develops stimuli, mechanical or otherwise. Patient later on develops changes in the skin which can be discoloration, the extremity becomes cold and very painful. As time progresses on, patient develops some trophic changes in the nail and the hair growth and skin quality changes. And gradually patient can develop contractures or permanent changes in the extremity.”
 

 Dr. Singh further stated that RSD can be caused by minor trauma such as an abrasion, a cut, or even a pinprick. The trauma may be so minor that the patient does not recall the trauma. In regard to what caused Julie to develop RSD, Dr. Singh, who also is the Lyonses’ expert witness in this action, testified as follows:
 

 “[LYONSES’ COUNSEL]: Do you know of any other trauma that Ms. Lyons experienced here at the hospital during that November 2003 hospitalization which is capable of causing RSD other than the infiltration?
 

 “[DR. SINGH]: I’m not aware of any other trauma.
 

 “[LYONSES’ COUNSEL]: In your opinion, what is more likely to cause based upon your own education, background, training, and experiences as well as your own treatment of Ms. Lyons, what is the most likely cause of RSD?
 

 “[DR. SINGH]: Most likely related to the IV.
 

 “[LYONSES’ COUNSEL]: And when you say most likely related to the IV, what do you mean?
 

 “[DR. SINGH]: Just the process of starting an IV or a problem resulting from IV infiltration, both traumas can possibly initiate the Reflex Sympathetic Dystrophy.”
 

 On September 13, 2005, the Lyonses initiated this action against Vaughan in the Dallas Circuit Court. Julie alleged negligence under the Alabama Medical Liability Act, § 6-5-480 et seq., Ala.Code 1975, and Godfrey alleged loss of consortium. On February 8, 2008, Vaughan filed a motion for a summary judgment as to the Lyons-es’ claims. After the Lyonses responded and a hearing was held, the trial court entered a summary judgment in favor of Vaughan on June 23, 2008, without stating the grounds for the summary judgment. The Lyonses appeal.
 

 Standard of Review
 

 “ ‘ “In reviewing the disposition of a motion for summary judgment, we utilize the same standard as that of the trial court in determining whether the evidence before the court made out a genuine issue of material fact” and whether the movant was entitled to a judgment as a matter of law.
 
 Bussey v. John Deere Co.,
 
 531 So.2d 860, 862 (Ala.1988); Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to present substantial evidence creating such an issue.
 
 Bass v.
 
 
 *27
 

 SouthTrust Bank of Baldwin County,
 
 538 So.2d 794, 797-98 (Ala.1989). Evidence is “substantial” if it is of “such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.”
 
 West v. Founders Life
 
 As
 
 surance Co. of Florida,
 
 547 So.2d 870, 871 (Ala.1989).’
 

 “Ex parte General Motors Corp.,
 
 769 So.2d 903, 906 (Ala.1999).
 

 “ “When the basis of a summary-judgment motion is a failure of the non-movant’s evidence, the movant’s burden, however, is limited to informing the court of the basis of its motion— that is, the moving party must indicate where the nonmoving party’s case suffers an evidentiary failure. See
 
 General Motors,
 
 769 So.2d at 909 (adopting Justice Houston’s special concurrence in
 
 Berner v. Caldwell,
 
 543 So.2d 686, 691 (Ala.1989), in which he discussed the burden shift attendant to summary-judgment motions); and
 
 Celotex Corp. v. Catrett,
 
 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (stating that “a party seeking summary judgment always bears the initial responsibility of informing the [trial] court of the basis of its motion”).’
 

 “Rector v. Better Houses, Inc.,
 
 820 So.2d 75, 80 (Ala.2001).
 

 “ ‘When the trial court does not give specific reasons for entering a summary judgment, we will affirm the judgment if there is any ground upon which the judgment could have been based.
 
 Yarbrough v. C & S Family Credit, Inc.,
 
 595 So.2d 880, 881 (Ala.1992).’
 

 “McCloud v. City of Irondale,
 
 622 So.2d 1272, 1273 (Ala.1993).”
 

 Brown v. St. Vincent’s Hosp.,
 
 899 So.2d 227, 233-34 (Ala.2004).
 

 Analysis
 

 In their complaint, the Lyonses allege that the staff of the medical center breached the standard of care by negligently assessing, observing, and evaluating the Hep-lock device inserted in Julie’s right hand and the injection of medication through the Hep-lock device and by negligently failing to remove the Hep-lock device in a timely manner when Julie complained of pain, redness, and swelling in her hand. They also allege in their complaint that because of these purported in-actions by the staff of the medical center, Julie subsequently developed RSD. On appeal, the Lyonses state that “the only question before this Court is whether [Julie] met her burden by substantial evidence to refute Vaughan’s contention that [Julie’s] RSD was not related to any breach of the standard of care of Vaughan’s nurses.” (Lyonses’ brief, p. 25.)
 

 In
 
 Sorrell v. King,
 
 946 So.2d 854 (Ala.2006), this Court observed:
 

 “A plaintiff in a medical-malpractice action must also present expert testimony establishing a causal connection between the defendant’s act or omission constituting the alleged breach and the injury suffered by the plaintiff.
 
 Pruitt v. Zeiger,
 
 590 So.2d 236, 238 (Ala.1991).
 
 See also Bradley v. Miller,
 
 878 So.2d 262, 266 (Ala.2003);
 
 University of Alabama Health Servs. Found., P.C. v. Bush,
 
 638 So.2d 794, 802 (Ala.1994); and
 
 Bradford v. McGee,
 
 534 So.2d 1076, 1079 (Ala.1988). To prove causation in a medical-malpractice case, the plaintiff must demonstrate ‘ “that the alleged negligence probably caused, rather than only possibly caused, the plaintiffs injury.” ’
 
 Bradley,
 
 878 So.2d at 266 (quoting
 
 University of Alabama Health
 
 
 *28
 

 Servs.,
 
 638 So.2d at 802).
 
 See also DCH Healthcare Auth. v. Duckworth,
 
 883 So.2d 1214, 1217 (Ala.2003) (‘“There must be more than the mere possibility that the negligence complained of caused the injury; rather, there must be evidence that the negligence complained of
 
 probably
 
 caused the injury.” ’ (quoting
 
 Parker v. Collins,
 
 605 So.2d 824, 826 (Ala.1992))); and
 
 Pendarvis v. Pennington,
 
 521 So.2d 969, 970 (Ala.1988) (‘ “The rule in medical malpractice cases is that to find liability, there must be more than a mere possibility or one possibility among others that the negligence complained of caused the injury; there must be evidence that the negligence probably caused the injury.” ’ (quoting
 
 Williams v. Bhoopathi,
 
 474 So.2d 690, 691 (Ala.1985), and citing
 
 Baker v. Chastain,
 
 389 So.2d 932 (Ala.1980))). In
 
 Cain v. Howorth,
 
 877 So.2d 566 (Ala.2003), this Court stated:
 

 “ ‘ “ ‘To present a jury question, the plaintiff [in a medical-malpractice action] must adduce some evidence indicating that the alleged negligence (the breach of the appropriate standard of care)
 
 probably
 
 caused the injury. A mere possibility is insufficient. The evidence produced by the plaintiff must have “selective application” to one theory of causation.’ ” ’
 

 “877 So.2d at 576 (quoting
 
 Rivard v. University of Alabama Health Servs. Found., P.C.,
 
 835 So.2d 987, 988 (Ala.2002)). However, the plaintiff in a medical-malpractice case is not required to present expert testimony to establish the element of proximate causation in cases where ‘the issue of proximate cause is not ... “beyond the ken of the average layman.” ’
 
 Golden v. Stein,
 
 670 So.2d 904, 908 (Ala.1995). Therefore, ‘[u]nless “the cause and effect relationship between the breach of the standard of care and the subsequent complication or injury is so readily understood that a layperson can reliably determine the issue of causation,” causation in a medical-malpractice case must be established through expert testimony.’
 
 DCH Healthcare Auth.,
 
 883 So.2d at 1217-18 (quoting
 
 Cain,
 
 877 So.2d at 576).”
 

 946 So.2d at 862-63.
 

 The Lyonses rely on the testimony of Dr. Singh to show a causal connection between the IV infiltration and the RSD from which Julie suffers. If this Court were to presume that Julie suffered an IV infiltration while she was a patient at the medical center and that the IV infiltration was the result of negligence on the part of Vaughan, Dr. Singh’s testimony is insufficient to create a genuine issue of material fact as to whether Julie’s RSD was
 
 probably
 
 caused by the IV infiltration. As previously noted, Dr. Singh testified as follows:
 

 “[LYONSES’ COUNSEL]: In your opinion, what is more likely to cause based upon your own education, background, training, and experiences as well as your own treatment of Ms. Lyons, what is the most likely cause of RSD?
 

 “[DR. SINGH]: Most likely related to the IV.
 

 “[LYONSES’ COUNSEL]: And when you say most likely related to the IV, what do you mean?
 

 “[DR. SINGH]: Just the process of starting an IV
 
 or
 
 a problem resulting from IV infiltration,
 
 both traumas can possibly initiate the Reflex Sympathetic Dystrophy.”
 

 (Emphasis added.) To have a valid claim under the Alabama Medical Liability Act, the Lyonses must provide evidence indicating that the negligence alleged is the
 
 *29
 

 proximate and probable
 
 cause of Julie’s injury; a mere possibility or one possibility among others is insufficient to meet the burden of proof. See
 
 Sorrell v. King,
 
 supra. Dr. Singh identified various types of minor trauma that could be possible causes of RSD. Although he identified the Hep-lock device as “the most likely” cause of Julie’s RSD, he identified both the insertion of the Hep-lock device and an infiltration of the Hep-lock device as
 
 possible
 
 causes of the RSD. Such evidence is insufficient to show a causal connection between the purported IV infiltration and the RSD. Thus, the summary judgment in favor of Vaughan is due to be affirmed.
 

 The Lyonses alternatively argued before the trial court that expert testimony was unnecessary because, they say, a layperson could readily understand that IV infiltration probably caused Julie’s RSD. However, she does not make that argument on appeal. “ ‘An argument not made on appeal is abandoned or waived.’ ”
 
 Muhammad v. Ford,
 
 986 So.2d 1158, 1165 (Ala.2007) (quoting
 
 Avis Rent A Car Sys., Inc. v. Heilman,
 
 876 So.2d 1111, 1124 n. 8 (Ala.2003)).
 

 As to Godfrey’s loss-of-consortium claim, “[a] loss-of-consortium claim is derivative of the claims of the injured spouse.”
 
 Flying J Fish Farm v. Peoples Bank of Greensboro,
 
 12 So.3d 1185, 1196 (Ala.2008). Because Julie’s claim fails, so must Godfrey’s loss-of-consortium claim fail.
 
 Id.
 

 Conclusion
 

 Because the Lyonses have not established a proximate causal connection between the purported IV infiltration Julie sustained as a patient at the medical center and the RSD, we affirm the summary judgment entered in favor of Vaughan as to Julie’s claim under the Alabama Medical Liability Act. Because Godfrey’s loss-of-consortium claim is derivative of Julie’s claim, we also affirm the summary judgment in favor of Vaughan as to Godfrey’s loss-of-consortium claim.
 

 AFFIRMED.
 

 WOODALL, SMITH, PARKER, and SHAW, JJ., concur.
 

 [1]
 

 . The record does not contain any of Julie’s medical records.
 

 [2]
 

 . During his deposition in this action, Dr. Iqbal Singh, Julie’s pain-management doctor and the physician who admitted her to the medical center, recalled seeing during a prior deposition in another action in which Julie was seeking Social Security disability benefits a document in the medical center's records possibly mentioning that the Hep-lock device that had been used on Julie was not functioning. That document, however, was not contained in the medical center’s records provided to Dr. Singh during his deposition in this matter.