These are consolidated appeals from summary judgments granted in favor of defendants C.M. Gross and Lynn C. Carlin, executrix of the estate of John T. Carlin, M.D., in a medical malpractice action filed by Charles F. Swendsen. We reverse and remand as to both appeals.
Mr. Swendsen, a 72-year-old retired member of the merchant marine, experienced severe chest pains and other ailments and was attended by Dr. C.M. Gross, his regular physician, who had Swendsen admitted to Knollwood Park Hospital. During his seven-day hospital stay, Swendsen was given a series of examinations, as described in his discharge summary prepared by Dr. Gross:
 "This patient was a 72-year-old, white male, who was admitted to the hospital for care and evaluation of the left anterior chest pain of two weeks duration. This pain was mostly postprandial in nature and not accentuated by exercise, but due to the severity of the pain he was admitted for care and evaluation. He *Page 766 
has had a history of hiatal hernia and EKG's in the office were normal. He was subjected to a work-up. A holter monitor revealed occasional frequent premature ventricular contractions occurring at times in a bigeminal rhythm with periods of superventricular tachycardia on occasion. He was seen in consultation by Dr. Massing who did a stress cardiogram which revealed no specific problems with barely positive ST segment depression for ischemia with late exercise nonspecific sensation of feeling and needing to belch which could possibly be angina. Because of this he was subjected to a cardiac catheterization on 3-23-83 which showed a 60% obstructive lesion in the obtuse marginal branch of the circumflex. The patient was given nitrates to take before meals and seemingly improved on this and he is to be continued on this as an outpatient. He had some glucose intolerance and is to be carried along on a 1,500 calorie ADA diet. His chest x-ray was within normal limits. He had no pain since the catheterization and he is to be discharged on Sorbitrate 10 mg. with each meal and HS, and is to be followed in the office as an outpatient.
 "FINAL DIAGNOSIS: Chest pain of undetermined etiology, 60% obstructive lesion of obtuse marginal brach right circumflex coronary artery. Noninsulin dependent diabetes mellitus.
"CONDITION: Improved.
"PROGNOSIS: Good."
The chest X-ray referred to in that summary was performed on March 18, 1983, by Dr. Carlin, who reported these findings and opinions:
"ROENTGENOLOGICAL FINDINGS:
 "CHEST: The bony thorax is intact with flattening of the hemidiaphragms. The cardiomediastinal silhouette is not remarkable, the heart being of normal size. The hilar and pulmonary vascular pattern is normal and the lungs are clear showing relative increased radiolucency and a calcified nodule in the right costophrenic angle.
 "OPINION: No active cardiopulmonary disease detected, emphysematous changes being noted.
 "GALLBLADDER SERIES: The gallbladder concentrates contrast media well outlining the organ to be of normal size and configuration with a smooth mucosal pattern and no filling defects within.
"OPINION: Normal gallbladder study.
 "UPPER G.I. SERIES: Normal deglutition took place revealing no abnormalities of the esophagus. A small, direct sliding hiatus hernia was demonstrated. The stomach otherwise was anatomically and functionally normal in appearance, with an uninterrupted rugal pattern present. The duodenal bulb fills out to a smooth conical shape, and the duodenal loop and proximal jejunum are not remarkable.
"OPINION: Small, uncomplicated hiatus hernia."
Following his discharge from Knollwood Park Hospital in March, Swendsen visited Dr. Gross several times, complaining of pain. On July 24, 1983, Swendsen entered the University of South Alabama Medical Center. After examination there, Swendsen was diagnosed as having cancer of the esophagus. An operation revealed that his condition was terminal.
Swendsen initiated this action in November 1983 against Dr. Gross, Knollwood Park Hospital, and several fictitious defendants. Thereafter, Swendsen died, and Opal Swendsen, his administratrix, was substituted as the plaintiff. Mrs. Swendsen's amended complaint charged the defendants with negligence which resulted in the wrongful death of Swendsen. Later, Dr. Carlin was substituted for one of the fictitious defendants.
A final judgment was entered in favor of Knollwood Park Hospital in January 1986, and no appeal was taken from that judgment. In August 1986, Dr. Carlin's death was suggested upon the record, and the executrix of his estate was substituted as a party defendant.
In October 1986, Dr. Gross received summary judgment in his favor, and, in March *Page 767 
1987, Dr. Carlin's executrix was also granted summary judgment. The plaintiff appeals from those judgments.
The plaintiff's complaint, as amended, charged Dr. Gross and Dr. Carlin with negligence, as follows:
 "5. On and after March 17, 1983, the Defendants singularly and severally, personally or through agents or employees, contrary to their agreement, duty and undertaking to furnish the Plaintiff with competent and timely medical and surgical diagnosis and treatment, were negligent and failed in their duty to the deceased in that among other negligent acts or omissions, said Defendants:
 "(a) Knew or should have known that the deceased was suffering from cancer of the esophagus and stomach, but failed to diagnose and treat said conditions.
 "(b) Did not inform the deceased of the terminal and dangerous propensities of said condition if it were not treated.
 "(c) Did not possess or failed to utilize that degree of medical and surgical knowledge, skill, and competency required by law of all physicians and hospitals caring for patients.
 "(d) Where the deceased complained of difficulty in swallowing, the extreme loss of weight, and pains in his chest, the Defendant not only misdiagnosed the deceased's troubles as heart trouble, but failed to conduct investigatory and exploratory tests when the condition of the deceased deteriorated having no response to the Defendant's treatment.
 "6. All of the above acts or omission on the part of all the Defendants were error, constituted negligence, departed from and fell below the standard of care required of physicians practicing medicine in Mobile County, Alabama, and of hospitals operating in Mobile County, Alabama.
 "7. As a direct and proximate result of the negligent and unskilled practice on the part of the Defendant, the deceased suffered a spread of cancer throughout organs of his body and died on July 5, 1984."
Thus, the gist of the charge of negligence was the misdiagnosis of heart disease instead of cancer.
Dr. Carlin's executrix's motion for summary judgment was based upon the pleadings and upon Dr. Carlin's affidavit. Dr. Gross's summary judgment motion was based upon the pleadings and affidavits filed in the cause, particularly his own affidavit. Dr. Carlin's affidavit stated that he "exercised such reasonable care, diligence, and skill as radiologists in the same general line of practice ordinarily have and exercise in a like case" in performing his services to Swendsen. Dr. Gross's affidavit was similar, stating, "[A]t no time during my care and treatment of the patient [Swendsen] did I deviate from the standard of care as other physicians similarly situated in the national medical community under similar conditions in and about my treatment of said patient."
Primarily, the plaintiff contends that the defendants' conclusory affidavits were mere general denials of liability, and, thus, were insufficient to raise a prima facie defense that would shift the burden of proof to the nonmoving party. While we agree with the general proposition that a mere general denial of liability, without more, does not entitle a movant to a judgment as a matter of law (see Rule 56, A.R.Civ.P.), we note that, here, the defendants' motions for summary judgment were based on all the pleadings and certain accompanying medical records. Admittedly, the defendants' personal affidavits were not models of technical compliance, in that they did not set forth a review of the pertinent data from the medical records. In view of the defendants' personal knowledge of their care and treatment of the patient, however, we believe the trial court could infer from the medical records at hand the necessary foundation for the admission of each of their expert opinions to the effect that they exercised due care in their care and treatment of the patient. Welch v. HoustonCounty Hospital Board, 502 So.2d 340 (Ala. 1987).
Thus, we address the plaintiff's alternative position — that also included in *Page 768 
the court file, for the trial court's consideration, was the affidavit of one Dr. Calvin R. Openshaw, which the plaintiff contends meets her burden of raising a "genuine issue as to [a] material fact." Rule 56 (c), A.R.Civ.P. The plaintiff correctly acknowledges that, ordinarily, in a professional malpractice case, once the defendant offers expert testimony in his behalf (albeit his own opinion), establishing lack of negligence, the defendant is entitled to a summary judgment, unless the plaintiff counters the defendant's evidence with expert testimony in support of the plaintiff's claim. See Phillips v.Alonzo, 435 So.2d 1266 (Ala. 1983).
The general rule in Alabama is stated in Powell v. Mullins,479 So.2d 1119 (Ala. 1985):
 "The general rule in Alabama is that in medical malpractice cases expert medical testimony is required to establish what is and what is not proper medical treatment and procedure. An exception to this general rule exists where an understanding of the doctor's lack of due care or skill requires only common knowledge or experience."
479 So.2d at 1120.
After setting out his professional qualifications and detailing his review of Mr. Swendsen's hospital and medical records, Dr. Openshaw gave the following opinions:
 "My opinions about this case, after study of the available records and materials stated above, [are] as follows:
 "1. The general clinical picture which the patient presented, of chest pain after eating, relief by antacids, lack of aggravation by physical exercise, weight loss and difficulty of swallowing is not compatible with an impression or diagnosis of trouble resulting from heart disease. The possible difficulties of distinction of heart disease from disease of esophageal origin is well recognized by informed physicians who deal with such matters. The failure to define the history as that of someone with gastro-intestinal problems is negligent.
 "2. The interpretation of the gastrointestinal X-rays by a radiologist named T. Carlin, M.D., was that there was a `small sliding hiatal hernia present,' as well as `no abnormalities of the esophagus.' Radiologists have great advantage over other physicians in carrying out an examination such as this, being able to view the organs from many different aspects under a fluoroscope. Nonetheless, it appears that Dr. Carlin failed to appreciate changes which seemed obvious to me, and to five other physicians I asked to view the films, none of whom was a radiologist. Without exception, especially when provided with the history of pain and dysphagia, [they] agreed that there were changes at the esophagogastric junction that must be considered suspicious of cancer until proved otherwise. I believe the radiologist was negligent in failing to appreciate the signs of cancer in this patient.
 "3. With the history, lack of evidence implicating the cardiac system, plus some changes seen on the gastro-intestinal study, I consider it negligent not to have obtained consultation from a gastro-enterologist and upper endoscopic examination. The latter would undoubtedly have made the diagnosis almost five months sooner than was accomplished.
 "4. Admittedly, this condition is a difficult one in which to accomplish a cure. However, there seems to be a question that five months of delay in defining the problem and accomplishing a proper treatment further lessens the chances of a successful result. I would consider both Drs. Gross and Carlin to be responsible for substandard care and negligence in this case.
"In summary:
 "Charles F. Swendsen, a 73-year-old male who was seen in March 1983 with symptoms compatible with a diagnosis of esophageal cancer (pain on swallowing, weight loss, trivial findings on cardiac workup) failed of a diagnosis until seen approximately five months later by another chest specialist. The delay should be considered negligent, despite the poor prognosis of anyone with the disease in question." *Page 769 
The defendants counter the plaintiff's alternative position by arguing that Dr. Openshaw's affidavit is insufficient, because not all of the documents referred to in his testimony are in the record. The documents missing from the record to which the defendants direct our attention are the X-rays from which Dr. Carlin made his diagnosis and the records of Mr. Swendsen's later hospitalization at the University of South Alabama Medical Center.
To urge a literal, technical application of the language of Rule 56 (e) ("copies of all papers or parts thereof referred to in an affidavit shall be attached thereto") to disallow the whole of Dr. Openshaw's affidavit, in the context of this case, is misguided. We note at the outset that the first numbered paragraph of Dr. Openshaw's affidavit makes no reference to the missing documents in his evaluation of Dr. Gross's "misdiagnosis" of the patient's condition. Indeed, the missing records with regard to the patient's second hospitalization are of no consequence in any event, because the defendants' affidavits do not controvert the plaintiff's allegations that the patient was subsequently correctly diagnosed, during his second hospitalization, as having terminal cancer. The missing documents of any consequence, then, are the X-ray films used by Dr. Carlin in his diagnosis of Mr. Swendsen's condition, from which Dr. Carlin testified that the patient's symptoms were caused by a condition other than cancer and from which Dr. Openshaw testified that Dr. Carlin should have diagnosed cancer.
It is interesting to observe that in the ordinary course of a jury trial of this case, the issue here presented would not arise. A subpoena duces tecum would have issued to the hospital for all the medical records, including the X-rays, and then certified copies of the records would have been filed in the case pursuant to Ala. Code, §§ 12-21-5, -6, and -7. At the trial, each of the doctors testifying as an expert witness, whether for the plaintiff or for the defendants, would have explained his testimony, particularly his reading of the X-rays, by specific references to the actual X-ray films, as well as to other medical "papers or parts thereof referred to in [the witness's testimony]."
The problem arises here because both the affiant and the counter-affiant are necessarily required to testify abstractly, each of them referencing the same physical documents — the X-ray films — but neither of them being able to assist the court by directing the court's attention to the physical evidence from which they are drawing their respective conclusions. The distinction we draw between the use of the X-ray films for summary judgment purposes and for trial purposes is a significant one, because it points out the fact that the trial court, in ruling on a summary judgment motion, is in precisely the same position whether the X-ray films are part of the record or not. All the trial court knows, in either event, is that Dr. Carlin interpreted the X-rays as not showing
cancer and Dr. Openshaw interpreted the same X-rays as showing
cancer.
Moreover, while the defendants' conclusory affidavits shifted the burden of proof to the plaintiff to produce counter expert evidence, the standard by which the two sides are to be judged remains the same. To be sure, Dr. Carlin's "personal knowledge" may have aided his otherwise "mere general denial" by making his affidavit admissible, but it was from the X-rays — not in evidence — that he made his diagnosis. While we are unwilling to hold that the missing X-rays render Dr. Carlin's expert testimony insufficient for Rule 56 purposes, we are also unwilling to hold that the same missing X-rays render Dr. Openshaw's expert testimony insufficient.
We hold, therefore, that, for summary judgment purposes, Dr. Openshaw's affidavit, when judged by the same standard as that by which Dr. Carlin's affidavit is judged, raises triable issues of fact as to both the plaintiff's allegations of negligence and her claims of proximate cause; thus, we reverse the summary judgments appealed from and remand the cause for trial.
86-314 REVERSED AND REMANDED.
86-867 REVERSED AND REMANDED. *Page 770 
MADDOX, JONES, SHORES and ADAMS, JJ., concur.
TORBERT, C.J., and BEATTY, J., concur in the result.