These consolidated appeals are from summary judgments for the defendants in two medical malpractice cases. In each case, after the defendant physician or physicians produced evidence that their actions did not cause the patient's condition to worsen, the trial court ruled that the plaintiffs had failed to present substantial evidence that the alleged negligence of the physicians probably caused the injuries that the plaintiffs complained of, and in each case the court entered a summary judgment. We affirm.
The first case involves Martin McAfee, who was born at Baptist Medical Center in Montgomery. He developed bacterial meningitis and suffered permanent brain damage and vision impairment. He (acting through his mother) and his mother (individually) sued Baptist Medical Center, Dr. Gillis Payne, Dr. Payne's professional corporation, Dr. Rodney Dorand, and Neonatal Associates, P.C. The plaintiffs alleged that the defendants had breached acceptable standards of medical practice, specifically that they had failed to recognize, appreciate, and treat the child's bacterial infection in a timely manner, and they alleged that this failure to diagnose properly had resulted in a worsening of Martin's condition.
The second case involves an alleged failure to timely diagnose the breast cancer of Brenda Roberts. She and her husband sued Family Medical, P.C., Life Diagnostic Radiology, Dr. Robert Kimbrell, and Dr. Maurice Rowell, claiming that the defendants' failure to properly evaluate the lump that Dr. Kimbrell found in Brenda's right breast resulted in a one-year delay of treatment and that that delay resulted in an unnecessary worsening of her condition.
We must consider whether the trial court erred in entering the summary judgment for the defendants in each of these cases. Rule 56, A.R.Civ.P., sets forth a two-tiered standard for determining whether to enter a summary judgment. In order to enter a summary judgment, the trial court must determine: 1) that there is no genuine issue of material fact, and 2) that the moving party is entitled to a judgment as a matter of law. In determining whether a summary judgment was properly entered, the reviewing court must view the evidence in a light most favorable to the nonmovant. See Turner v. Systems Fuel, Inc.,475 So.2d 539, 541 (Ala. 1985); Ryan v. Charles Townsend Ford,Inc., 409 So.2d 784 (Ala. 1981). In this case, Rule 56 must be read in conjunction with the "substantial evidence rule" as defined by Ala. Code 1975, § 6-5-542(5), part of the Alabama Medical Liability Act:
 "(5) SUBSTANTIAL EVIDENCE. Substantial evidence is that character of admissible evidence which would convince an unprejudiced thinking mind of the truth of the fact to which the evidence is directed.
"[W]hen the movant makes a prima facie showing that no genuine issue of material fact exists, . . . the burden shifts to the non-movant to show 'substantial evidence' in support of his position." Leonard v. Providence Hospital, 590 So.2d 906, 907
(Ala. 1991). *Page 267 
In medical malpractice cases, the plaintiff must prove that the alleged negligence "probably caused the injury."Parrish v. Russell, 569 So.2d 328, 330 (Ala. 1990), citingWilliams v. Bhoopathi, 474 So.2d 690, 691 (Ala. 1985). This has been the standard in Alabama for decades. In the 1929 case ofMcKinnon v. Polk, 219 Ala. 167, 121 So. 539 (1929), this Court stated:
 "The proof must go further than merely show that an injury could have occurred in an alleged way — it must warrant the reasonable inference and conclusion that it did so occur as alleged — and the inference merely that it could so occur does not warrant the conclusion that it did so occur, where from the same proof the injury can with equal probability be attributed to some other cause."
219 Ala. at 168, 121 So. at 540. The plaintiff must prove the alleged negligence through expert testimony, unless an understanding of the alleged lack of due care or skill requires only common knowledge or experience. Smith v. Medical CenterEast, 585 So.2d 1325 (Ala. 1991).
If, as the defendants suggest, the plaintiffs are in fact asking this Court to abandon Alabama's traditional rules of proximate cause and to recognize the "loss of chance doctrine," we decline to do so.[1] Alabama law requires that a recovery not be based upon a mere possibility:
 "The rule in Alabama in medical malpractice cases is that to find liability, there must be more than a mere possibility or one possibility among others that the negligence complained of caused the injury. There must be evidence that the negligence probably caused the injury. Pappa v. Bonner, 268 Ala. 185, 105 So.2d 87 (1958)."
Baker v. Chastain, 389 So.2d 932, 934 (Ala. 1980).
The plaintiffs cite us to Parker v. Collins, 605 So.2d 824
(Ala. 1992), wherein we stated:
 "This Court has previously held that the issue of causation in a malpractice case may properly be submitted to the jury where there is evidence that prompt diagnosis and treatment would have placed the patient in a better position than she was in as a result of inferior medical care. Waddell v. Jordan, 293 Ala. 256, 302 So.2d 74 (1974); Murdoch v. Thomas, 404 So.2d 580 (Ala. 1981). It is not necessary to establish that prompt care could have prevented the injury or death of the patient; rather, the plaintiff must produce evidence to show that her condition was adversely affected by the alleged negligence. Waddell; see also Annot. 54 A.L.R.4th 10 § 3 (1987)."
Id. at 827. We do not read Parker as abrogating the rule that the plaintiff must prove that the physician's negligence probably caused the injury. In Parker, we reversed a judgment based on a directed verdict for the defendant physician on the grounds that the "medical testimony suggests that Mrs. Parker's condition worsened as a direct result of a diagnosis based upon a substandard X-ray," stating, "That evidence was sufficient to create a jury question as to proximate cause in this case. . . ." 605 So.2d at 827 (Emphasis added.) In Parker, a cancer specialist testified that he was 80% certain that the cancer had not spread into the lymph nodes at the time of the improper diagnosis. Thus, there was expert testimony from which the jury could infer that the physician's negligence probably caused her injury.
We have carefully studied the record in each of the cases before us and in both cases we conclude that the defendants made a prima facie showing that they were entitled to a judgment as a matter of law on the issue of causation by producing evidence that their actions did not cause the patient's condition to worsen. In neither case did the plaintiffs submit substantial evidence that the patient's condition worsened as a direct result of the actions of the defendant physicians.
In the first case, the baby, Martin McAfee, contracted meningitis from bacteria. He was treated by Dr. Rodney Dorand. Dr. Dorand, a board certified neonatologist, submitted an *Page 268 
affidavit stating that he was familiar with the degree of care, skill, and diligence normally exercised by physicians practicing neonatology in 1990, and that, in his opinion, nothing he did or did not do in his care and treatment of Martin McAfee probably caused or contributed to cause any injury. The affidavit of the plaintiffs' expert, Dr. O. Carter Snead III, offered a conjectural observation that, generally, the sooner the onset of treatment, the better the expected result. There is no evidence that the actions of Dr. Dorand or those of Dr. Gillis Payne, who first saw the baby, probably caused the poor outcome. In the second case, the plaintiffs submitted affidavits stating, generally, that "time is of the essence" in treating breast cancer, and that patients who receive earlier treatment obtain a better result. There was no expert testimony to rebut the testimony submitted by the defendants indicating that the metastasis to the lymph nodes probably occurred in the early stages before the cancer could be diagnosed. The affidavits of the plaintiffs' experts did not rise to the level of substantial evidence that the actions of the defendants probably caused Brenda Roberts's injuries.
The summary judgment in each case is due to be affirmed on the authority of McKinnon v. Polk, 219 Ala. 167, 121 So. 539
(1929); Peden v. Ashmore, 554 So.2d 1010 (Ala. 1989); Sasser v.Connery, 565 So.2d 50 (Ala. 1990); Smith v. Medical CenterEast, 585 So.2d 1325 (Ala. 1991); Parker v. Collins,605 So.2d 824 (Ala. 1992); and Levesque v. Regional Medical Center,612 So.2d 445 (Ala. 1993).
AFFIRMED.
HORNSBY, C.J., and HOUSTON, STEAGALL and COOK, JJ., concur.
KENNEDY and INGRAM, JJ., dissent.
[1] The majority of jurisdictions do not recognize the loss of chance (to achieve a better medical outcome) as a compensable injury. Lisa Perrochet, Sandra J. Smith, and Ugo Colella, LostChance Recovery and the Folly of Expanding Medical MalpracticeLiability, 27 Tort Insurance Law Journal, No. 3, at 615 (Spring 1992).