746 So.2d 998 (1999)
Mary Ann GIADA
v.
Bruce A. TUCKER, M.D.
1980167.
Supreme Court of Alabama.
July 30, 1999.
Rehearing Denied October 22, 1999.
J. Flint Liddon of Johnson, Liddon, Bear & Tuggle, Birmingham, for appellant.
Randal H. Sellers and Joseph L. Reese, Jr., of Starnes & Atchison, L.L.P., Birmingham, for appellee.
HOOPER, Chief Justice.
Mary Ann Giada appeals from a summary judgment in favor of the defendant, Dr. Bruce Tucker, in Ms. Giada's action against him alleging medical malpractice. The trial court held that Ms. Giada had not shown that Dr. Tucker's alleged negligence probably caused her injury. We reverse and remand.
On December 24, 1994, Ms. Giada went to the emergency room at the Baptist Medical Center-Princeton, complaining of headaches and pain in her neck and shoulders. *999 Dr. Tucker, a board-certified internist, diagnosed Ms. Giada as having degenerative joint disease and muscle spasms and treated her accordingly. On December 26, 1994, Ms. Giada returned to the emergency room, again complaining of headaches and neck and shoulder pain.[1] She was admitted to the hospital and, after obtaining a sedimentation rate, the hospital began prednisone therapy. The hospital then ordered a right temporal artery biopsy and an MRI of Ms. Giada's brain. After Ms. Giada reported that her vision was impaired, the hospital increased the dosage of prednisone. The biopsy confirmed that she was suffering from temporal arteritis. Despite the increased prednisone, Ms. Giada became totally and permanently blind in both eyes.[2]
Ms. Giada sued Dr. Tucker, alleging that he had negligently failed to timely diagnose her temporal arteritis. She alleged that, if he had correctly diagnosed the temporal arteritis in the emergency room and had begun treatment immediately, she would not have become blind. Dr. Tucker moved for a summary judgment. Dr. Tucker's motion was supported by his affidavit stating that his treatment of Ms. Giada fell within the appropriate standard of care. This Court has said, "[O]nce the defendant offers expert testimony in his behalf (albeit his own opinion) establishing lack of negligence, the defendant is entitled to a summary judgment, unless the plaintiff counters the defendant's evidence with expert testimony in support of plaintiff's claim." Swendsen v. Gross, 530 So.2d 764, 768 (Ala.1988). Because Ms. Giada, at the time the trial court ruled on Dr. Tucker's summary judgment motion, had not countered his affidavit with expert testimony in support of her claim, the trial court entered a summary judgment in favor of Dr. Tucker. Ms. Giada then filed a motion asking the court to reconsider, which the trial court granted. As evidence in opposition to Dr. Tucker's motion for a summary judgment, Ms. Giada presented the affidavit of an expert witness, Scott A. Kale, M.D.
In his affidavit, Dr. Scott Kale maintained that the symptoms Ms. Giada complained of at both visits to the emergency room indicated temporal arteritis and that a sedimentation rate should have been obtained during those visits. Further, Dr. Kale's affidavit stated, "If a correct diagnosis had been made by the second emergency room visit, the Standard of Care dictates that Steroid therapy be started immediately. If this [therapy] had been instituted, it is most likely probable that blindness would not have occurred."[3] (Emphasis added.)
After considering Dr. Kale's affidavit testimony, the trial court again entered a *1000 summary judgment in favor of Dr. Tucker. The trial court held that although Ms. Giada had presented substantial evidence that Dr. Tucker had breached the appropriate standard of care, she had not proved by substantial evidence that Dr. Tucker's negligence proximately caused her blindness. The court wrote: "Specifically, this Court finds that the plaintiffs expert affidavits[4] fail to provide substantial evidence that the claimed medical negligence probably caused injury to the plaintiff." R-42-43.
"In reviewing the disposition of a motion for summary judgment, we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact" and whether the movant was "entitled to a judgment as a matter of law." Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988); Rule 56(c), A.R.Civ.P. When the movant makes a prima facie showing that there is no genuine issue of material fact, then the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. South-Trust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989).
It is well established that to create a jury question as to proximate cause in a medical-malpractice case, the plaintiff must present substantial evidence that the alleged negligence probably caused the injury. See McAfee v. Baptist Medical Ctr., 641 So.2d 265 (Ala.1994). Substantial evidence is defined by Ala.Code 1975, § 6-5-542(5), part of the Alabama Medical Liability Act, as "that character of evidence which would convince an unprejudiced thinking mind of the truth of the fact to which the evidence is directed." In medical-malpractice cases, substantial evidence is provided by expert medical testimony. See Dews v. Mobile Infirmary Ass'n, 659 So.2d 61 (Ala.1995); Swendsen v. Gross, 530 So.2d 764 (Ala.1988); Powell v. Mullins, 479 So.2d 1119 (Ala.1985).
In the present case, Ms. Giada presented the trial court with an affidavit from Dr. Scott A. Kale, a physician board-certified in internal medicine, with a specialty in rheumatology. Dr. Kale testified, by way of affidavit, that had Dr. Tucker correctly diagnosed and treated Ms. Giada's condition, "it is most likely probable that blindness would not have occurred." It is clearly difficult to distinguish between the meaning of the phrase "most likely probable" and the meaning of the word "probable." Dr. Kale's words could mean that there is only a chance that it is probable that had treatment begun earlier blindness would not have occurred; if this is the case, the trial court would have been correct in entering the summary judgment. However, the statement could also have been Dr. Kale's way of restating what he had said earlier. The insertion of a comma would have dramatically changed the statement to "most likely, probable." The doctor could have meant to say that the delay in administering steroid therapy most likely caused Ms. Giada's blindness, i.e., that it was probable that Dr. Tucker's negligence caused Ms. Giada's blindness. Or Dr. Kale may have intended to strengthen the meaning of the word "probable," as in "very probable."
In reviewing a summary judgment, this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala. 1990). Ambiguities must be resolved in favor of the nonmovant. See Ex parte Brislin, 719 So.2d 185 (Ala.1998); Hurst v. Alabama Power Co., 675 So.2d 397 (Ala. 1996); Fuqua v. Ingersoll-Rand Co., 591 So.2d 486 (Ala.1991). Resolving the ambiguity in Dr. Kale's statement in favor of Ms. Giada, we conclude that the phrase "most likely probable" is indistinguishable from the single word "probable." Therefore, *1001 we conclude that Ms. Giada presented substantial evidence that Dr. Tucker's negligence probably caused her injury. Dr. Kale's affidavit created a jury question as to proximate cause in this case. We reverse the summary judgment and remand the case for consideration by a jury.
REVERSED AND REMANDED.
HOUSTON, LYONS, BROWN, and JOHNSTONE, JJ., concur.
MADDOX and SEE, JJ., dissent.
SEE, Justice (dissenting).
I respectfully disagree with the conclusion that the plaintiff presented substantial evidence indicating that the alleged negligence "probably" caused the injury. It is well established, in medical-malpractice cases, that in order to create a jury question as to proximate cause, the plaintiff must present substantial evidence that the alleged negligence probably caused the injury. See McAfee v. Baptist Medical Ctr., 641 So.2d 265, 267 (Ala.1994). The plaintiff's proof of proximate causation "`must be more than a mere possibility ... that the negligence complained of caused the injury.'" McAfee, 641 So.2d at 267 (quoting Baker v. Chastain, 389 So.2d 932, 934 (Ala.1980)). As this Court stated in McAfee:
"`The proof must go further than merely show that an injury could have occurred in an alleged wayit must warrant the reasonable inference and conclusion that it did so occur as alleged and the inference merely that it could so occur does not warrant the conclusion that it did so occur, where from the same proof the injury can with equal probability be attributed to some other cause.'"
Id. (quoting McKinnon v. Polk, 219 Ala. 167, 168, 121 So. 539, 540 (1929)) (emphasis added).
Dr. Kale testified in his affidavit that he had "been retained by the Plaintiff to render opinions regarding [1] the Standard of Care rendered to the Plaintiff, [2] possible breach and [3] whether the Plaintiffs injuries could have been avoided or mitigated had her condition been properly evaluated and treated." (Emphasis added.) Dr. Kale testified that if steroid therapy "had been instituted, it is most likely probable that blindness would not have occurred." (Emphasis added.)
Expert witnesses typically understand the legal standard that applies in the cases in which their opinions are sought, and they are expected to testify with precision. Saying "most likely probable" is equivalent to saying "probably probable."[5] This reading is supported by Dr. Kale's own statement that he was asked to give his opinion as to "whether the Plaintiff's injuries could have been avoided or mitigated," not as to their probable cause. (Emphasis added.) "Probably probable" falls short of the standard of proof for proximate causation. I would affirm the summary judgment. Therefore, I respectfully dissent.
MADDOX, J., concurs.
NOTES
[1] The record is unclear as to who treated Ms. Giada on her second visit to the emergency room. Apparently, however, this was not an issue on appeal.
[2] Ms. Giada's complaint states that by the afternoon of December 26, 1994, her "blindness had already taken effect and [had] become irreversible."
[3] Dr. Kale stated in his affidavit:

"After review of medical records and testimony of witnesses, my opinion is that her care leading up to blindness caused by temporal arteritis was well below the generally recognized Standard of Care. The two main issues affecting the outcome of this case are the failure to diagnose the Plaintiff's condition in a timely fashion and the failure to recommend ophthalmic care long after the ocular symptoms began. Her symptoms of temporal arteritis are likely noted in the medical record as early as October 18, 1994 (2 months prior to her admission to the hospital). With a reasonable degree of medical certainty, I can say that the diagnosis of temporal arteritis should have been made at least by December, 1994. At both her first and her second emergency room visits, her symptoms were pathognomonic for temporal arteritis, but laboratory tests did not include a sedimentation rate. If a correct diagnosis had been made by the second emergency room visit, the Standard of Care dictates that Steroid therapy be started immediately. If this [therapy] had been instituted, it is most likely probable that blindness would not have occurred." R-32.
[4] In addition to Dr. Kale's affidavit, Ms. Giada also presented the affidavit of Dr. Matthew Goren, M.D., a board-certified ophthalmologist.
[5] This presents a compound probability. When probabilities are compounded, they are multiplied, and may well mean "probably not." For example, a 75% probability of a 60% probability is only a 45% probability (.75 × .60 = .45).