COBB, Chief Justice.
 

 Sarah Mosley appeals from a summary judgment entered by the Jefferson Circuit Court in favor of Brookwood Health Services, Inc., d/b/a Brookwood Medical Center (“Brookwood”). We affirm.
 

 
 *432
 

 Facts
 

 On March 19, 2003, Mosley was admitted to the intermediate-care unit 2 (“IMCU-2 unit”) of the psychiatric department at the Brookwood Medical Center to be treated for depression.
 

 While Mosley was in the IMCU-2 unit, another patient (“patient A”) was also receiving treatment there. Patient A had been admitted to the IMCU-2 unit for treatment of schizophrenia, agitation, violent behavior, and paranoia. Patient A’s medical records indicate that she was admitted to the hospital in part because she had been “picking fights with almost everyone around her.” The staff at Brook-wood Medical Center was under instructions to monitor and observe the patients in the IMCU-2 unit at 15-minute intervals and to note their observations. At 9:15 a.m. and again at 9:30 a.m. on March 20, 2003, patient A was at the nurses’ station, and she was agitated and combative. Patient A hit, kicked, cursed, and shoved staff members, including Brenda Freeman, a mental-health technician. Patient A was then placed in “time out” (i.e., she was sent to her room to be separate from the other patients for 15 minutes; the door to patient A’s room was unlocked). During the staffs 15-minute observations of patient A from 9:45 to 11:45 a.m., patient A remained quiet, staying either in her room or at the nurses’ station. Then, at some time between the staffs observation of patient A at 12:00 p.m. and the next scheduled observation of her at 12:15 p.m. on March 20, 2003, patient A attacked Mosley in Mosley’s room. Mosley cried out, and patients and staff went to her assistance. Mosley reported that patient A had pulled her hair and smashed her head on the floor. Patient A was subsequently transferred to a different psychiatric unit at Brookwood Medical Center.
 

 Freeman testified in deposition that the procedures in the IMCU-2 unit required the staff to place combative patients in “time out” for 15 minutes. If the patient remained combative after the 15-minute “time out,” the staff was to contact the patient’s doctor and, if the doctor so ordered, to seclude the patient by placing the patient in a locked room used for that purpose.
 

 Procedural History
 

 On March 21, 2005, Mosley filed the instant medical-malpractice action against Brookwood.
 
 [1]
 
 On March 27, 2007, Brook-wood filed a motion for a summary judgment. The trial court withheld ruling on Brookwood’s summary-judgment motion to allow Mosley further time for discovery. On June 23, 2008, after further proceedings and a hearing on the summary-judgment motion, the trial court entered a summary judgment in favor of Brookwood. Mosley appealed.
 

 Standard of Review
 

 “This Court’s review of a summary judgment is de novo.
 
 Williams v. State Farm Mut. Auto. Ins. Co.,
 
 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.;
 
 Blue Cross & Blue Shield of Alabama v. Hodurski,
 
 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant.
 
 Wilson v. Brown,
 
 496 So.2d 756, 758 (Ala.
 
 *433
 
 1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial evidence’ as to the existence of a genuine issue of material fact.
 
 Bass v. SouthTrust Bank of Baldwin County,
 
 588 So.2d 794, 797-98 (Ala.1989); Ala. Code 1975, § 12-21-12.”
 

 Dow v. Alabama Democratic Party,
 
 897 So.2d 1035, 1038-39 (Ala.2004).
 

 Analysis
 

 This medical-malpractice action is governed by the Alabama Medical Liability Act, § 6-5-480 et seq. and § 6-5-541 et seq., Ala.Code 1975 (“the AMLA”).
 
 See Mock v. Allen,
 
 783 So.2d 828, 832 (Ala.2000) (noting that the AMLA “applies ‘[i]n any action for injury or damages or wrongful death, whether in contract or in tort, against a health care provider for breach of the standard of care.’ ” (quoting § 6-5-548(a), Ala.Code 1975)). “To prevail on a medical-malpractice claim, a plaintiff must prove ‘ “1) the appropriate standard of care, 2) the [health-care provider’s] deviation from that standard, and 3) a proximate causal connection between the [health-care provider’s] act or omission constituting the breach and the injury sustained by the plaintiff.” ’ ”
 
 Giles v. Brookwood Health Servs., Inc.,
 
 5 So.3d 533, 549 (Ala.2008) (quoting
 
 Pruitt v. Zeiger,
 
 590 So.2d 236, 238 (Ala.1991), quoting in turn
 
 Bradford v. McGee,
 
 534 So.2d 1076, 1079 (Ala.1988)).
 

 Mosley alleges that Brookwood negligently failed to seclude patient A by placing her in a locked room used for that purpose after patient A’s combative behavior around 9:15 a.m. and negligently failed to contact a doctor for authorization to so seclude patient A. In support of this argument, Mosley relies on Freeman’s deposition testimony to establish the standard of care.
 
 [2]
 
 Freeman testified that the standard of care required staff members in the IMCU-2 unit to place combative patients in “time out” for 15 minutes. According to Freeman,
 
 if
 
 the patient remained combative after the “time-out” period, the standard of care would have required the staff to contact a doctor to obtain further orders. If the doctor so ordered, the staff was then to seclude the combative patient in a locked room. Mosley produced no evidence indicating that Freeman or any other member of the staff of Brookwood Medical Center failed to follow these procedures. The undisputed evidence demonstrates that the staff placed patient A in “time out” when patient A was combative around 9:15 a.m. and again at 9:30 a.m., that patient A was not combative at the expiration of the “time-out” period, that patient A was monitored and observed at 15-minute intervals, and that patient A remained calm and noncombative until she attacked Mosley between 12:00 and 12:15 p.m. Thus, according to the standard of care as testified to by Freeman, from the time patient A became calm after the
 
 *434
 
 “time out” until she attacked Mosley, the staff had no duty to take further steps to isolate patient A from the other patients or to contact a doctor for authorization to seclude patient A in a locked room. Because the undisputed evidence demonstrates that Brookwood acted in accordance with the standard of care in isolating patient A, the trial court’s judgment is not due to be reversed on the issue of the standard of care.
 
 See Giles, 5
 
 So.3d at 549 (holding that summary judgment was proper when the plaintiff did not present evidence indicating that a physician failed to act in accordance with the applicable standard of care).
 

 Mosley also alleges that Brook-wood failed to properly monitor Mosley. Freeman testified that the general practice in the IMCU-2 unit was to monitor the patients every 15 minutes. Mosley accepts this practice as being within the standard of care. The evidence demonstrates that Freeman monitored Mosley at 15-minute intervals on March 20, 2003, including at 12:00 p.m. and 12:15 p.m. Relying on what she perceives as discrepancies in Brook-wood’s records, Mosley seems to question whether this evidence was fabricated after the fact and whether the staff indeed monitored Mosley at those times. However, Mosley presents no evidence to demonstrate that monitoring her at 15-minute intervals could have prevented the attack, which it is undisputed occurred
 
 between
 
 12:00 and 12:15. Accordingly, with regard to Brookwood’s alleged negligence in monitoring Mosley, the trial court did not err in entering the summary judgment.
 
 See Crutcher v. Williams,
 
 12 So.3d 631, 648 (Ala.2008)(opinion on return to second remand) (“[T]o prevail on a medical-malpractice claim ... the plaintiff must prove that a breach of the standard of care ...
 
 proximately
 
 and
 
 probably
 
 caused actual injury to the plaintiff.”).
 

 Mosley also alleges that Brook-wood breached the standard of care by not responding promptly to the attack. However, Mosley cites no evidence as to the standard of care for responding to such an attack, and no evidence that any alleged delay in coming to Mosley’s assistance caused or contributed to her injuries. Therefore, with regard to Brookwood’s alleged negligence in responding to the attack, the trial court did not err in entering the summary judgment.
 
 See Giles,
 
 5 So.3d at 548 (“To prevail on her medical-malpractice claim ... [the plaintifij must prove, among other things, that [the medical-services provider] violated the duty to ‘ “exercise such reasonable care, diligence, and skill as physicians ... in the same general neighborhood, and in the same general line of practice, ordinarily have and exercise in a like case.” ’ ” (quoting
 
 Pruitt,
 
 590 So.2d at 238, quoting in turn Ala.Code 1975, § 6-5-484(a)));
 
 cf. McAfee v. Baptist Med. Ctr.,
 
 641 So.2d 265 (Ala.1994) (holding that, absent proof of actual injury caused by alleged delay in the diagnosis and treatment of disease, plaintiffs could not recover on their AMLA claims against medical-services providers).
 

 Conclusion
 

 No genuine issue of material fact exists, and Brookwood is entitled to judgment as a matter of law. Therefore, we affirm the summary judgment for Brookwood.
 
 See
 
 Rule 56(c), Ala. R. Civ. P.
 

 AFFIRMED.
 

 LYONS, STUART, BOLIN, and MURDOCK, JJ„ concur.
 

 [1]
 

 . March 20, 2005, was a Sunday.
 

 [2]
 

 . Freeman, a mental-health technician, is not a licensed nurse. Brookwood argues that Freeman’s testimony cannot be used to establish the standard of care for licensed nurses and the IMCU-2 unit as a whole because, according to Brookwood, Freeman is not a "similarly situated” health-care provider as required under § 6-5-548, Ala.Code 1975. Mosley argues to the contrary. Mosley further argues that, in any event, Freeman may at least testify as to the standard of care governing the mental-health technicians, including Freeman, who Mosley alleges negligently allowed the attack to occur. We need not address these arguments, however, because, as we explain in this opinion, even using the standard of care described by Freeman, Mosley did not produce substantial evidence indicating that any of the staff of Brookwood Medical Center breached that standard of care.